**SOCIETY CREATED TO REDUCE URBAN BLIGHT (SCRUB), Center City Residents Association (CCRA), Mary Cawley Tracy, and Councilman David Cohen, Estate of Samuel Rappaport,**

v.

**ZONING BOARD OF ADJUSTMENT, City of Philadelphia, and Outdoor Works and Estate of Samuel Rappaport.**

**Appeal of Outdoor Works.**

Commonwealth Court of Pennsylvania.

Argued June 6, 2003.

Decided Sept. 8, 2003.

As Amended Oct. 1, 2003.

Reargument En Banc Denied
Oct. 14, 2003.

testified that he shaves his neck, but he grew a beard because he cannot shave his face without cutting himself.

Glenn A. Weiner, Philadelphia, for appellant.

Samuel C. Stretton, West Chester, for appellee.

BEFORE: LEADBETTER, Judge, LEAVITT, Judge, and MIRARCHI, Senior Judge.

1. It appears that the Board granted both a use variance and a dimensional variance. The Board stated, "[s]ince the proposed changes meet all requirements for a use variance and a dimensional variance, the [Board] grants the requested variance." Conclusion of Law No. 11 (C.L.——).

2. A wall wrap drapes the side of a building like a banner.

3. Applicant has a license from the property owner to install and operate a wall wrap on the western side of the building.

4. It pertains to C–4 and C–5 Commercial Districts and provides, in pertinent part:

   (2) *Use Regulations*. It is the intention of this section of the Code to allow for types of uses that are commonly found in and compatible with a high-density business core. The uses permitted in these districts are those which minimize negative impact upon and which are compatible with the use and enjoyment of the public sidewalks and public space by large numbers of people and which enliven and enhance the public use, experience and enjoyment of

OPINION BY Judge LEAVITT.

Outdoor Works (Applicant) appeals from a decision of the Court of Common Pleas of Philadelphia County (trial court) dated October 8, 2002, reversing the Philadelphia Zoning Board of Adjustment's (Board) grant of a variance [1] for a wall wrap [2] display. We affirm the trial court.

On February 22, 2000, Applicant submitted an application for a use permit to the Philadelphia Department of Licenses and Inspections (L & I) to "[i]nstall one wall-mounted, single-face, non-illuminated wall-wrap display (62' wide by 100' high) approximately 142' from grade to top of wall-wrap display" on the building located at 726–728 Market Street, which is in a C–5 Commercial District. [3] Reproduced Record 25a (R.R. ——). On March 13, 2000, L & I denied the application pursuant to Sections 14–305 [4] and 14–1604 [5] of the City of Philadelphia Zoning Code (Zoning Code), finding:

   these spaces. Therefore, the specific uses *permitted* in these districts shall be the erection, construction, alteration or use of buildings and/or land for:

   * * *

   (b) The uses permitted in "C–3" Commercial Districts subject to all the use qualifications set forth therein except:

   * * *

   (.2) The following uses shall be *prohibited*:

   * * *

   (.b) *Commercial outdoor advertising* and/or commercial non-accessory advertising signs as permitted in § 14–1604.
   Zoning Code, § 14–305(2)(b)(.2)(.b) (emphasis added).

5. Section 14–1604 of the Zoning Code contains extensive and detailed legislative findings that commercial outdoor advertising and non-accessory signs have proliferated to the detriment of the City and its residents. As a result, it imposes numerous special sign controls regarding: spacing; distances from residentially-zoned property; area regulations; height regulations; sign face regulations; illu-

this use, non-accessory general outdoor area sign[6] is prohibited fin (sic) the district[7] ... this sign is not permitted unless another general outdoor advertising sign or signs encompassing equal or greater sign area are removed[8] ... this sign exceeds the maximum allowable height of 20 feet above the road surface and ... this sign exceeds the maximum allowable height of 25 feet from the bottom edge to the top of the sign[9] ....

R.R. 26a (footnotes added).

Applicant appealed L & I's decision to the Board[10] and a hearing was held on July 11, 2001.[11] Applicant presented the testimony of Albert M. Tantala, a civil engineer who conducted a visual, structural inspection of portions of the subject wall and prepared a structural engineering report.[12] He testified that the building was located on the south side of Market Street and that the wall wrap itself was not within 300 feet of any residentially-zoned property, 500 feet of any other non-accessory sign, 600 feet of a ramp to a major highway, or 660 feet of a bridge, registered historic district, park, or a school.[13] He further testified that, based upon his structural inspection of the wall, it could sup-

minated, animated, flashing and revolving sign regulations; prohibited areas; conditions for the issuance of a permit to erect outdoor advertising and non-accessory signs; supporting structures; and the removal and maintenance of nuisance, unlawful and prohibited signs. It also addresses enforcement, penalties and severability.

6. An "outdoor advertising or non-accessory sign" is defined as "[a] sign which directs attention to a business, industry, profession, commodity, service, organization, activity, institution, product, or entertainment neither sold, located nor offered upon the property where the sign is situated." Zoning Code, § 14–102(86)(k). The wall wrap at issue meets this definition.

7. *See supra* note 4.

8. Section 14–1604(10)(a) provides:
   *(10) Conditions [f]or [t]he Issuance of a Permit to Erect Outdoor Advertising and Non-Accessory Signs.*
   (a) For each outdoor advertising and non-accessory sign erected in conformance with these provisions, an existing sign or signs encompassing equal or greater sign area shall be removed....
   Zoning Code, § 14–1604(10)(a).

9. L & I erroneously reversed the height regulations in its denial. Specifically, under Section 14–1604(6)(a) of the Zoning Code, "[t]he bottom edge of any outdoor advertising sign shall not be located more than 25 feet above the road surface from which the advertising message is visible and further provided, that

in no case shall the sign extend more than 20 feet in height above its bottom edge."

10. In its appeal, Applicant requested all "variances, certificates and special use permits that may be required." R.R. 27a.

11. At the time of the hearing, the building supported a wall wrap that featured Ben Franklin promoting Absolut Vodka. R.R. 24a. Applicant's counsel admitted at the hearing that this wall wrap was not licensed.

12. Mr. Tantala also submitted a site plan and a traffic report.

13. Section 14–1604(9) provides:
   *(9) Prohibited Areas.* Outdoor advertising signs and non-accessory signs shall be prohibited:
   (a) Within 660 feet of all bridges over the Schuylkill River from the Girard Point Bridge northwestwardly to the Belmont Avenue Bridge;
   (b) Within 660 feet of all ingress and/or egress ramps of the Delaware Expressway (I–95), from the Bucks County Line, and the Schuylkill Expressway (I–76), between the Montgomery County Line and the Walt Whitman Bridge;
   (c) Within 660 feet of the Benjamin Franklin Parkway as defined by the Department of Streets;
   (d) Between Twenty-third street and the Schuylkill River from the south side of Race street to Chestnut street;
   (e) Between Twenty-fourth street and the Schuylkill River from Chestnut street to South street;

port the wall wrap. Mr. Tantala acknowledged that the wall wrap did not comply with the height and area restrictions set forth in Section 14–1604 of the Zoning Code insofar as it was 100 feet high, 62 feet wide and the bottom of the wall wrap was situated 40 feet above grade in order for it to clear a nearby building. Further, on cross-examination, Mr. Tantala testified that he was not aware that the wall wrap was located within the East Center City Historic District or approximately 510 feet from the Declaration (Graff)[14] House.

Mr. Carl Cordek, the treasurer and general manager of RRR Management Company, Inc. (RRR), the company that managed the property for the owner of the building, Estate of Samuel Rappaport (the Estate), testified. He stated that the building was purchased in the mid–1970s; that it was nine stories high; and that the floors above the first floor were sealed off and not used. The first floor contained a beauty salon, which occupied approximately one-third of the rental space available on that floor. The income generated from this lone tenant was not sufficient to cover the expenses associated with the property, including real estate taxes, insurance, maintenance and security. Most of the available first floor space had been previously occupied by a McDonald's restaurant.

According to Mr. Cordek, his company actively marketed the building to secure other tenants, but those efforts had been unsuccessful. He opined that the upper floors were "not economically feasible to be brought into an income producing stream." R.R. 176a. Finally, he indicated that various signs and advertisements had been displayed on the building for many years and that the current wall wrap was not a detriment to the integrity of the building structure itself.

On cross-examination, Mr. Cordek testified that when the building was purchased, there were no tenants above the second floor and that RRR primarily made improvements to the first floor to attract tenants. He added that none of the building's three elevators worked and that the building lacked air conditioning. He also stated that he was unaware of certain tax credits and abatements that could be used to help fund repairs to the building.

David Neff, president of Applicant, testified that he became interested in putting a wall wrap on the building in 1998 or 1999 and, as a result, he entered into an agree-

(f) East of Sixth street from South street to the south side of Race street;

(g) Between Sixth street and Christopher Columbus boulevard from South street to Washington avenue;

(h) Within 660 feet of the outward edge of the right-of-way lines, as defined by the Streets Department, of the Delaware Expressway between Washington avenue and Oregon avenue;

(i) Within 660 feet of all the bridges over the Delaware River from the Walt Whitman Bridge to the Tacony–Palmyra Bridge;

(j) Within 660 of the outward edge of the right-of-way lines, as defined by the Streets Department, of Woodhaven road;

(k) Within 660 feet of the outward edge of the right-of-way lines, as defined by the Streets Department, of the Roosevelt boulevard;

(l) Within any area of the City designated as local or National Historic District;

(m) Within 660 feet of the outward edge of any park under the jurisdiction of the Fairmount Park Commission, the Commonwealth of Pennsylvania or the National Park Service;

(n) Within 660 feet of any park, playground, recreation center, play lot or other recreational facility under the jurisdiction of the Department of Recreation; and,

(o) Within 660 feet of any public or private pre-school, elementary, middle or high school.

Zoning Code, § 14–1604(9).

14. In the record, the Graff House is mistakenly referred to as the Grass House.

ment with the Estate. He indicated that he was aware that a license had been granted to paint a mural on the wall and that one had been situated on the building for some time. He also stated that his long term plan for the building was to place a wall wrap on it that would complement "what is eventually developed" at Eighth and Market Streets. R.R. 188a.

During cross-examination, Mr. Neff was asked to comment about a letter issued by L & I on July 15, 1999, granting provisional permission for a wall wrap as long as the wrap promoted the development of Market Street. He indicated that while the current wrap did not specifically promote Market Street, it did complement the civic orientation of Philadelphia. In any event, the current wall wrap was not a result of that application.

In opposition, the Society Created to Reduce Urban Blight, the Center City Residents Association, Mary Cawley Tracy, and Councilman David Cohen (collectively Objectors), presented the testimony of Janet Potter, the Director of Advocacy for the Foundation for Architecture, a City-wide non-profit organization whose mission "is public participation in the design and the development of Philadelphia." R.R. 201a. According to Ms. Potter, the wall wrap raised several issues that had not been thoroughly explored by the City of Philadelphia, its agencies or its citizens. Although her group typically did not take a particular position with respect to outdoor signs, in this case, it was concerned that the income generated by such wall wraps would create a disincentive for building owners to repair, maintain, and/or rehabilitate their properties. She envisioned "temporary wall wraps turning vacant properties into nothing but long-term permit props for megasized outdoor advertising." R.R. 202a. Accordingly, she believed that further thought and study were necessary for the public to understand the effect of wall wraps on the City.

Objectors also presented the testimony of Gray Smith, a licensed architect and community planner who prepared a preliminary report regarding the property. He testified that the buildings on the south side of the 700 block of Market Street were in good to excellent condition and that renovations had taken place on the upper floors of many of the properties. He also noted that the commercial properties on both sides of the 700 block of Market Street were substantially occupied.

Mr. Smith also testified that he obtained various maps from the Philadelphia Historical Commission during the course of preparing his report, including maps of the Society Hill Historic District and the East Center City Historic District. The maps indicated that the wall wrap was within the latter and within 660 feet of the former. The wrap, according to Mr. Smith, was also within 660 feet of the Declaration (Graff) House, a park under the jurisdiction of the National Park Service. He also referred the Board to his report, in which he identified nine features of the wall wrap that were not in conformity with the Zoning Code.[15]

---

15. These features included: (1) non-accessory outdoor advertising signs are prohibited in C–5 Commercial Districts; (2) Applicant was not removing a sign of equal or greater size; (3) the sign face area exceeded that allowed; (4) the bottom edge of the sign exceed the maximum allowed height above the street surface; (5) the sign exceed the maximum allowed height from the bottom edge of the sign; (6) the sign was within 660 feet of a park under the jurisdiction of the National Park Service; (7) the sign was within 660 feet of a school; (8) the sign was within the East Center City Historic District; and (9) the sign was within 660 feet of the Society Hill Historic District. R.R. 84a–85a.

Finally, the Board was presented with a letter from the Philadelphia Planning Commission dated June 29, 2001, wherein the Commission indicated that it opposed the grant of a variance because the application involved what it considered to be major departures from various applicable City ordinances and would not be in the public interest. *See* R.R. 218a–219a.

The Board granted the variance.[16] Specifically, it concluded that Applicant satisfied all of the requirements of Section 14–1604 of the Zoning Code "except the maximum square footage requirement for the sign face under [S]ection 14–1604(5) and the height restrictions under [S]ection 14–1604(6)," [17] and that these "square footage and height restrictions are dimensional requirements and may be remedied by the grant of a dimensional variance." C.L. 4. It further concluded that:

> [t]he proposed changes to the subject property are not contrary to the public interest because they do not infringe on the purposes served by applicable zoning requirements or otherwise detrimentally affect the members of the public, neighborhood or adjacent property owners. In addition, the proposed changes will result in an unnecessary hardship on the subject property and its owner if

the requested variance is not granted because the subject property has been vacant notwithstanding diligent efforts of the owner to secure tenants for alternative uses over an extended period of time encompassing more than two decades.

C.L. 5. The Objectors appealed the Board's decision.

■■■■ The trial court reversed, finding that the Board abused its discretion in granting the variance. Specifically, it found, first, that Finding of Fact Nos. 12 and 23 were not supported by substantial evidence. Next, it found that Applicant did not prove the required hardship because financial hardship, without more, is not sufficient to grant a variance. Further, to the extent there was a hardship, it was the product of the owner's failure to rehabilitate the property and make it attractive to tenants, as opposed to any unique problems associated with the property itself. The trial court also found that granting the variance was against the public interest because, among other things, Section 14–604 of the Zoning Code specifically disfavors such signs and allowing them could provide a disincentive for property owners to rehabilitate their properties. This appeal followed.[18]

---

16. Section 14–801(1)(c) of the Zoning Code provides that the Board may, after public notice and hearing:

> authorize, upon appeal, in specific cases, such Variance from the terms of this Title as will not be contrary to the public interest, where, owing to special conditions, a literal enforcement of the provisions of this Title would result in unnecessary hardship, and so that the spirit of this Title shall be observed and substantial justice done, subject to such terms and conditions as the Board may decide.

Zoning Code, § 14–801(1)(c).

17. The Board's finding that "Applicant does not have any existing sign inventory," Finding of Fact No. 17 (F.F.——), and its correspond-

ing conclusion that Applicant "does not have any inventory of signs available for removal," C.L. 4, is clearly erroneous in light of Mr. Neff's testimony that Applicant had another wall wrap at 21st and Chestnut. R.R. 194a, 196a.

18. Where, as here, the trial court takes no additional evidence, this Court's scope of review is limited to determining whether the Board abused its discretion or committed an error of law. *Valley View Civic Association v. Zoning Board of Adjustment*, 501 Pa. 550, 554, 462 A.2d 637, 639 (1983). We may conclude that the Board abused its discretion only if its findings are not supported by substantial evidence. *Id.* at 555, 462 A.2d at 640. Substantial evidence is such relevant evidence as a

On appeal, Applicant contends that the trial court erred or abused its discretion by reversing the Board's grant of a variance because the Board "heard substantial evidence demonstrating unnecessary hardship to the [p]roperty attributable to, among other things, the location of the [p]roperty, the neighborhood's rental market, and the obsolete condition of the ... building...." Applicant's Brief at 8. The Board:

> also heard testimony that, although the [p]roperty [o]wner has been actively trying to market the [p]roperty for many years, the only tenant is a small hair salon renting only a third of the first floor space. The hardship has manifested itself in a situation where the [p]roperty has provided a negative financial return because the small amount of income generated from this lone tenant does not come close to covering the [o]wner's many ... expenses such as taxes, insurance, maintenance and security.

*Id.* at 8–9 (emphasis omitted). Furthermore, the Board "was presented with substantial expert testimony demonstrating that the grant of a variance would 'not adversely impact the public health, safety or welfare.'" *Id.* at 9. Because the wall wrap "is in a commercial area, does not limit the future ability to develop the [p]roperty, will not have any detrimental effects on other properties and will not distract drivers or create traffic safety problems," Applicant contends that the Board's decision must be upheld. *Id.*

Objectors respond that the record is devoid of any evidence of unnecessary hardship. In fact, there was unrefuted testimony that: (1) the buildings on the south side of the 700 block of Market Street were in good to excellent condition and that the upper floors of many of the buildings had been renovated; (2) other buildings in the area were substantially occupied; and (3) despite owning the property since 1974, the current owner has made no real effort to rehabilitate the building above the first floor. In sum, it is the owner's failure to make the building attractive to tenants, and not the building itself, which has caused it to remain vacant. Further, there are strong public policy reasons against the wall wrap. For the reasons that follow, we agree with Objectors.

First, to the extent the Board granted a dimensional variance, it clearly erred. We have repeatedly held that variances from Section 14–604 of the Zoning Code are not dimensional. *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment,* 787 A.2d 1123, 1126 (Pa.Cmwlth. 2001) ("Variances from the requirements of Section 14–1604 are not dimensional because a dimensional variance contemplates only a reasonable adjustment from area and space requirements in order to develop a *permitted* use, and Section 14–1604 prohibits the use of property for outdoor advertising unless its requirements are met."); *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment for the City of Philadelphia,* 772 A.2d 1040, 1045 (Pa.Cmwlth.2001) ("Dimensional variances involve only a reasonable adjustment from open area and space requirements in order to develop a *permitted* use. In contrast, Section 14–1604 prohibits the use of property for outdoor advertising and non-accessory advertising unless its requirements are met.") (citation omitted). Indeed, our Supreme Court has established that dimensional variances apply to *permitted* uses. *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh,* 554 Pa. 249, 257, 721 A.2d 43, 47 (1998)

reasonable mind might accept as adequate to support a conclusion. *Id.*

("When seeking a dimensional variance within a permitted use, the owner is asking only for a reasonable adjustment of the zoning regulations in order to utilize the property in a manner *consistent with the applicable regulations.* Thus, the grant of a dimensional variance is of lesser moment than the grant of a use variance, since the latter involves a proposal to use the property in a manner that is wholly outside the zoning regulation.") (emphasis added). As previously noted, Section 14–305(2)(b)(.2)(.b) of the Zoning Code prohibits commercial outdoor advertising and/or commercial non-accessory advertising signs as permitted in Section 14–1604, in C–5 Commercial Districts. *See supra* note 4. Accordingly, granting a dimensional variance for the wall wrap was error.

▆▆▆ Further, a party seeking a variance bears the burden of proving, *inter alia,* that an unnecessary hardship will result if the variance is not granted. *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment,* 804 A.2d 116, 119–120 (Pa.Cmwlth.2002). Absent a finding that property will be rendered valueless, financial hardship alone is not a sufficient basis for granting a variance. *Id.* at 120. Typically, the loss of rental income from disallowed outdoor advertising signs is not an unnecessary hardship. *Id.* (collecting cases). Under the Zoning Code, the applicant must also present evidence that the conditions on which the appeal for a variance is based are unique to the property and that the special conditions or circumstances forming the basis for the variance did not result from the actions of the applicant. Zoning Code, § 14–1802(1)(b) and (d).

Here, the only hardship asserted by Applicant was a financial hardship. However, this hardship was created by the prop-

erty owner's failure, over a period of more than 25 years, to take any steps to rehabilitate the property beyond the first floor. There is not a unique problem with the property undermining its rental value. The denial of a variance will have no effect on the ability of the property to continue to be used for purposes permitted in a C–5 Commercial District.[19]

Finally, even if Applicant did show the requisite hardship, that hardship would not support the erection of a wall wrap that does not comply with the area and height requirements of Sections 14–1604(5) and (6) of the Zoning Code. Indeed, the wall wrap at issue is much larger in overall surface area than is permitted by Section 14–1604(5), and five times higher than is permitted by Section 14–1604(6). It is difficult to imagine any hardship that would support the variances required for the erection of a wall wrap of this magnitude.

For these reasons, the decision of the trial court is affirmed.

### *ORDER*

AND NOW, this 8th day of September, 2003, the decision of the Court of Common Pleas of Philadelphia County, dated October 8, 2002 in the above-captioned matter, is hereby affirmed.

▆▆▆▆▆

---

**19.** Because we conclude that Applicant did not prove the required hardship, we need not determine whether a variance would be contrary to the public interest.