SOCIETY CREATED TO REDUCE UR-
BAN BLIGHT (SCRUB), Mary Caw-
ley Tracy, Councilman David Cohen,
Carol Sander and Bridesburg Civic
Association, Appellants

v.

ZONING HEARING BOARD OF AD-
JUSTMENT OF THE CITY OF
PHILADELPHIA, City of Philadel-
phia, Arsenal Business Center and El-
ler Media.

Commonwealth Court of Pennsylvania.

Argued June 10, 2004.
Decided Sept. 27, 2004.

Samuel C. Stretton, West Chester, for
appellants.

David L. Braverman, Philadelphia, for
appellee, Arsenal Business Center.

Glenn A. Weiner, Philadelphia, for appellee, Clear Channel Outdoor.

BEFORE: SMITH–RIBNER, Judge, and LEAVITT, Judge, and FLAHERTY, Senior Judge.

OPINION BY Judge SMITH–RIBNER.

The Society Created to Reduce Urban Blight and certain individuals (SCRUB) appeal from an order of the Court of Common Pleas of Philadelphia County that affirmed the decision of the Zoning Board of Adjustment of the City of Philadelphia (Board) that granted a variance to Eller Media Company, which is now Clear Channel Outdoor (Applicant), to erect two large outdoor advertising signs. SCRUB raises the following issues on appeal: whether the trial court's order constituted an error of law or an abuse of discretion because the record did not support a finding of hardship for the purpose of a variance and did demonstrate that a grant of the variance was against public policy and directly violated the provisions of Philadelphia Zoning Ordinance Section 14–1604; and whether the grant of the variance constituted an error of law or an abuse of discretion when there were no dimensional variance issues.

I

The property in question is the site of the former Frankford Arsenal, which was used by the federal government to manufacture and store military hardware and munitions beginning in the 1820s. The property was allowed to decay after the end of World War II, and the federal government abandoned it in 1976. It is an irregularly shaped site of over eighty acres containing sixty-seven buildings of various sizes, some of which are over 100 years old. The property is bordered by Tacony Avenue and I–95 to the west, Frankford Creek and Delaware Avenue to the east and Bridge Street to the south. The property is zoned G–2 Industrial, and it is surrounded by commercial and industrial properties, with a small residential area to the west. Hankin Management Company (HMC) purchased the property in December 1983. Arsenal Business Center, a commercial complex comprised of the buildings on the site, has approximately 1.8 million square feet of floor space, of which 1.3 million square feet are currently vacant. In recent years the occupancy rate has fluctuated between 28 and 32 percent.

In October 1999 Applicant filed an application with the Department of Licenses and Inspections (L & I) for zoning and use permits to erect two 20–foot by 60–foot, double-faced, freestanding outdoor advertising signs ("Sign A" and "Sign B") along the western side of the property, which would be visible to travelers on I–95. L & I determined that the proposals would not comply with the outdoor advertising regulations set forth in Section 14–1604 of the Philadelphia Zoning Code, and it issued nine use and two zoning refusals. Applicant appealed to the Board, which, after a hearing, granted use and zoning variances. On SCRUB's appeal, the trial court reversed the grant of the variances. On Applicant's further appeal, this Court concluded that the trial court lacked the authority to issue an order without having received the findings of fact and conclusions of law of the Board, and the Court remanded with instructions for the Board to file findings and conclusions. *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment of City of Philadelphia*, 804 A.2d 147 (Pa.Cmwlth. 2002) (*Arsenal I*). The Board filed its findings and conclusions on December 18, 2002.

The Board noted that Applicant agreed not to advertise alcohol, tobacco products or adult entertainment on the proposed signs and that the bases would be screened by trees. Albert M. Tantala, a licensed engineer, opined that the proposed signs would alleviate hardships caused by the history and circumstances of the property and that they would not impede current business activities, create traffic hazards or have an adverse impact on the surrounding area. Mark Hankin, president of HMC, testified that because of lead-based paint and asbestos in the buildings, deterioration and deed restrictions for historic preservation, renovations had been costly. He stated that HMC has expended nearly $24 million since acquiring the property and that it lost approximately $850,000 in 1988 and about $560,000 in 1999.

Proceeds of the lease with Applicant would assist with daily operating expenses and would enable Applicant to pay a loan to which it had not contributed in a year and a half. Gray Smith, an architect and urban planner, opined that the proposed signs would adversely affect the public health, safety and welfare and would substantially conflict with the purpose and the legislative intent of the Philadelphia Zoning Code. The Board considered evidence from several witnesses for and against the proposal and also expert reports. The Philadelphia Planning Commission recommended denial of the variance requests.

The Board's conclusions of law enumerated specific zoning provisions violated by the proposal. Section 14–1604(3) of the Zoning Code does not permit an outdoor advertising sign to be located within 500 feet of another outdoor advertising sign, but Sign A would be that close to two others. Section 14–1604(4) does not permit such a sign within 300 feet of any residentially zoned property, but Sign A would be. The maximum sign area per sign support structure is 1,500 square feet under Section 14–1604(5), but the proposed structures support 2,400 square feet. The bottom edge of any outdoor advertising sign shall not be located more that twenty-five feet from the road surface under Section 14–1604(6)(a), but the bottom of Signs A and B would be at fifty-three feet and forty-three feet. Under Section 14–1604(7) no more than one sign support structure shall be permitted on any one lot, but the proposal would increase the lot's signs from two to four. Section 14–1604(9)(b) prohibits outdoor advertising signs within 660 feet of ingress and/or egress ramps for the Delaware Expressway, and both proposed signs would be in the prohibited area. Section 14–1604(9)(l) prohibits outdoor advertising within any areas designated as a National Historic District. Section 14–1604(10)(a) requires removal of an equal or greater sign area as a condition of approval of a new sign, but Applicant did not propose to remove any existing sign. Therefore, variances would be required for the proposed structures to be approved.

The Board stated that to establish entitlement to a variance an applicant must show that there is an unnecessary hardship resulting from the property's unique physical conditions or circumstances, that such hardship is not self-imposed by the applicant, that granting the variance will not adversely affect the public health, safety or welfare and that the variance, if granted would represent the minimum necessary to afford relief, citing Section 14–1802(1) of the Zoning Code and *Carman v. Zoning Board of Adjustment of City of Philadelphia*, 162 Pa.Cmwlth. 80, 638 A.2d 365 (1994). It noted that a dimensional variance involves a request to adjust zoning regulations to use property in a manner consistent with regulations, but a use variance involves a request to use property in a manner that is wholly

outside zoning regulations; thus the quantum of proof is lesser for a dimensional variance, although for either type the applicant need not establish that the property is valueless without the variance. *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998).

■ The Board concluded that Applicant had demonstrated unnecessary hardship. In its Conclusion of Law 13 the Board indicated that this was not an instance of requesting a variance to obtain more profit from the use of a property but rather was simply a situation in which an owner needed some minor relief in order to maintain a historical site that otherwise would decay from want of viability. As a result, the Board determined that a variance would not adversely impact public health, safety and welfare, noting that Applicant agreed not to advertise alcohol, tobacco or adult entertainment, that the bases of the signs would be screened, that the nearby residential area was on the other side of I-95 and that a report by Tantala established that there was no connection between outdoor advertising signs and traffic safety concerns. The Board granted zoning and use variances. Without taking further evidence, the trial court issued an order on December 5, 2003 denying SCRUB's appeal and affirming the Board's action.[1]

II

SCRUB first contends that the trial court and the Board erred as a matter of law and abused their discretion in granting a variance for a proposal that violated

several provisions of Section 14–1604, restating those listed by the Board. It quotes the standard for granting a variance from *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 555–556, 462 A.2d 637, 640 (1983):

> The party seeking the variance bears the burden of proving that (1) unnecessary hardship will result if the variance is denied, and (2) the proposed use will not be contrary to the public interest. The hardship must be shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district. Moreover, mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance. (Citations omitted.)

Despite the fact that the Arsenal Business Center had lost revenue in recent years, SCRUB notes that some 1,400 people work there for various businesses and that there is a 32 percent occupancy rate.

In the recent case of *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment*, 831 A.2d 1255 (Pa. Cmwlth.2003) (*Outdoor Works*), *appeal denied*, 577 Pa. 739, 848 A.2d 931 (2004), the Court addressed a similar hardship issue where a sign was proposed to be placed on the outside of a nine-story building that had a tenant occupying one-third of the first floor but was otherwise vacant. Citing *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment*, 804 A.2d 116 (Pa.Cmwlth.2002) (*Callowhill Center Assocs.*), the Court stated that absent a finding that property will be ren-

---

1. Because the trial court took no additional evidence, this Court's review is limited to determining whether the Board committed an abuse of discretion or an error of law in granting the variance. *Valley View Civic Ass'n v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983). An abuse of discretion will be found only when the zoning board's findings are not supported by substantial evidence, which is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Id.*

dered valueless, financial hardship alone is not a sufficient basis for granting a variance and that typically the loss of rental income from disallowed outdoor advertising signs is not an unnecessary hardship. The applicant must also present evidence that the conditions on which the appeal for a variance is based are unique to the property and did not result from the actions of the applicant.[2]

Further, SCRUB argues that Applicant has not met the second prong of the *Valley View Civic Ass'n* test that the proposed use will not be contrary to the public interest. It quotes *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment*, 713 A.2d 135, 138 (Pa. Cmwlth.1998) (*Revere Nat'l Corp.*), where the Court reversed a grant of a variance to erect a large double-sided outdoor advertising sign on a long, narrow property with railroad tracks owned by Conrail, located in a "gateway" area: "[T]he Board committed an error of law when it determined that granting the variance would not be contrary to the public interest. The policy of the City, as specifically expressed in its zoning ordinance, indicates that it has a strong interest in keeping its streets free from urban blight." SCRUB quotes in full the extensive legislative findings in Section 14–1604(1)(a)–(m) of the Zoning Code, including, *inter alia*, findings that the excessive number of outdoor advertising signs contribute to visual clutter and detract from the aesthetic beauty of the City and that there are few if any circumstances under which the prohibition of these signs would render property valueless, result in unnecessary hardship or otherwise meet the variance criteria in Section 14–1802. SCRUB asserts that the Board abused its

discretion by not considering properly the strong public policy expressed in the Zoning Code.

Finally, SCRUB argues that this is not a dimensional variance case as in *Hertzberg*. The Supreme Court there allowed a lesser standard for proof of unnecessary hardship in dimensional variance cases, where an applicant seeks a modification of dimensional requirements in order to engage in a permitted use. This case, in contrast, involves an outright prohibition on any sign in the areas designated in Section 14–1604. In *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment for the City of Philadelphia*, 772 A.2d 1040, 1045 (Pa.Cmwlth.2001) (*Conrail*), the Court stated:

> [T]he variances that Conrail requires from Section 14–1604 are not dimensional. Dimensional variances involve only a reasonable adjustment from open area and space requirements in order to develop a *permitted* use. *Hertzberg.* In contrast, Section 14–1604 prohibits the use of property for outdoor advertising and non-accessory advertising unless its requirements are met. The requirement, for instance, that an existing sign or signs of equal or greater sign area be removed for each outdoor advertising and non-accessory sign erected cannot be reasonably characterized as dimensional.

In the recent case of *Outdoor Works*, the Court stated: "We have repeatedly held that variances from Section [14–1604] of the Zoning Code are not dimensional." *Id.*, 831 A.2d at 1261 (citing *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment*, 787 A.2d

---

**2.** In *Callowhill Center Assocs.* the owner asserted that a sign on the wall of a building was required to provide the funds for needed repairs and window replacements. The Board granted a variance, but the trial court

reversed and this Court affirmed, citing several recent decisions where the Court held that the loss of rental income from disallowed outdoor advertising signs was not an unnecessary hardship.

1123 (Pa.Cmwlth.2001) (*Amtrak Nat'l Railroad Passenger Corp.*), and *Conrail* ).

Applicant responds that the evidence presented before the Board demonstrated that the property is not economically viable. Applicant contends that SCRUB's dismissal of this evidence as proof of nothing more than financial hardship ignores Pennsylvania Supreme Court decisions recognizing the right of an owner trying to redevelop blighted or obsolete property to an economically viable use. In *Halberstadt v. Borough of Nazareth*, 546 Pa. 578, 687 A.2d 371 (1997), the Supreme Court reversed this Court's reversal of a grant of variances to the owner of an old "fortress-like" building. The zoning hearing board accepted testimony that it was not feasible to use the property for a parking garage or a one-story apartment building, and the court held that property owners are not required to reconstruct a building to a conforming use regardless of the financial burden.

In *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh*, 547 Pa. 163, 689 A.2d 225 (1997), the owner secured a variance to use its property as an open air parking lot in an area used for residential, commercial and institutional purposes. The site was contaminated in a way that would require as much as $3 million to remediate plus annual monitoring costs before it could be used for residential building. The Supreme Court reversed this Court's reversal of grants of variances. The court noted that showing that a property is valueless without a variance is one way to establish unnecessary hardship, although the court expressly rejected requiring such a showing, and it held that there was substantial evidence that the owner could not use the property for a permitted purpose nor conform it without prohibitive cost. Applicant also cites *Hertzberg*

where an owner was renovating a vacant former bank for a shelter for homeless women. The Supreme Court held that multiple factors may be considered to justify a variance. In *Vitti v. Zoning Board of Adjustment of City of Pittsburgh*, 710 A.2d 653, 658 (Pa.Cmwlth.1998), this Court stated that "where blighted or dilapidated conditions exist in urban areas, and where the applicant for a variance has undertaken efforts to remediate or renovate those areas for a salutary, productive purpose, a slight relaxation, or less stringent application, of the variance criteria" may be the only way that the land is put to beneficial use.

Applicant maintains that certain cases that SCRUB relied upon are distinct because in those cases the property was being used for a viable commercial purpose, citing *Revere Nat'l Corp.* (property used for active rail lines); *Society Created to Reduce Urban Blight v. Zoning Board of Adjustment of City of Philadelphia*, 771 A.2d 874 (Pa.Cmwlth.2001) (*Tantala* ) (property used for water treatment facility); and *Conrail* (property used for active rail lines). In *Outdoor Works* the holding of no hardship was premised on the finding that the property was not unique and that the owner had failed to make efforts to make it usable. Moreover, in *Zoning Hearing Board of Sadsbury Township v. Board of Supervisors of Sadsbury Township*, 804 A.2d 1274 (Pa.Cmwlth.2002), the Court reversed the denial of a variance where a parcel between sections of a highway was being used for limited, permitted agriculture, but the zoning board concluded that it could not be developed. This case, Applicant asserts, is about viability.

Pointing out that outdoor advertising signs are expressly permitted uses under G–2 zoning, Section 14–508(1)(aa) of the Zoning Code, Applicant asserts that it meets the *Hertzberg* standard of proof ap-

plicable to dimensional variances, *i.e.,* one that seeks only a "reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations," 554 Pa. at 257, 721 A.2d at 47. Although this Court has characterized limitations under Section 14–1604 as creating "floating zone" or "buffer zone" use restrictions, Applicant finds significant the statement in *Kennedy v. Upper Milford Township Zoning Hearing Board,* 575 Pa. 105, 117 n. 16, 834 A.2d 1104, 1111 n. 16 (2003), that a setback provision relating to the height of a transmission tower was dimensional and subject to *Hertzberg* analysis. Applicant suggests that cases such as *Daley v. Zoning Hearing Board of Upper Moreland Township,* 770 A.2d 815 (Pa.Cmwlth.2001), where the Court analyzed a grant of a variance to permit a reduced buffer zone between a church parking lot and neighboring property as a dimensional variance, indicate a split among panels of this Court in applying *Hertzberg.*

■ Applicant separately argues that "public policy" underlying the Zoning Code limitations on outdoor advertising signs cannot eliminate an owner's right to a variance where there is unnecessary hardship and no harm to the public interest. The Board received expert testimony that the proposed signs would not impair safety on I–95 or elsewhere or impair the use or enjoyment of the subject property or surrounding properties and would not adversely affect aesthetics of the area, but SCRUB argues that "public policy" embodied in provisions of the Zoning Code should bar a variance. Applicant notes that any zoning regulation embodies "public policy," and it argues that SCRUB's position would prevent any owner from ever obtaining a variance. Variances, however, provide a necessary relief valve for zoning ordinances to pass muster without violating the constitutionally protected property rights of land owners. *See Poster Advertising Co. v. Zoning Board of Adjustment,* 408 Pa. 248, 182 A.2d 521 (1962).

Furthermore, in *Amtrak Nat'l Railroad Passenger Corp.,* this Court rejected a trial court's conclusion that legislative findings of Section 14–1604 were conclusive regarding adverse effects of a proposed outdoor advertising sign despite accepted evidence to the contrary, on the ground that to accept the legislative findings as conclusive would be to preclude a variance. Applicant asserts that it would be a "stretch" to suggest that placing its proposed two billboards in the G–2 Industrial District will seriously offend public sensibilities.

### III

■ The Court is not persuaded by Applicant's assertions. First, there is no question, and there has never been any split in the Court's decisions on this point, that variances from the provisions of Section 14–1604 of the Zoning Code are use variances as opposed to dimensional variances subject to the lesser standard of proof of unnecessary hardship described in *Hertzberg. Conrail; Outdoor Works.* Despite Applicant's arguments to the contrary, the fact remains that Section 14–1604 was enacted as part of the Zoning Code, and it does embody the public policy of the City of Philadelphia regarding outdoor advertising signs.

It is important to understand precisely what Applicant is proposing. Although Applicant asserts repeatedly that commercial and industrial development of the subject property is not feasible because of adverse environmental conditions and other constraints such as historical preservation, Applicant is not proposing to abandon its efforts to continue such development.

This is not a case such as *Poster Advertising Co.*, where most of a residential lot was taken for road construction and the remainder would not have been suitable for any productive permitted use, and, as a result, the Supreme Court held that the owner established unnecessary hardship (and also lack of adverse impact on the public interest) and approved a variance for erection of two billboards as the use of the property. Here the owner intends to proceed with development of the existing property, and the rental income from the proposed signs is to be applied to furthering that development.

To raise revenue to advance its permitted but difficult development, Applicant is proposing the erection of two very large and high outdoor advertising signs that substantially violate every provision of Section 14–1604 that applies to them. Contrary to its contention, outdoor advertising signs are not necessarily permitted in the G–2 Industrial district. Rather, Section 14–508, relating to "G–2" General Industrial District, lists as a permitted use "(1)(aa) Outdoor advertising signs *as permitted in § 14–1604 of this Title.*" (Emphasis added.) As the Board candidly enumerated, the proposed signs violate provisions relating to proximity to other signs or to residentially zoned property, maximum sign area per structure, height above the roadway, number of signs permitted on a lot, proximity to ingress and egress ramps of the Delaware Expressway, removal of equal or greater sign area and prohibition of such signs in National Historic Districts. The Board's characterization of approval of this proposal as "minor relief" is unjustified.

■ Section 14–1802 of the Zoning Code, relating to criteria for granting variances, includes as a required consideration "(1)(k) that the grant of the variance will be in harmony with the spirit and purpose of this Title[.]" A grant of the variances requested in the present case could not possibly be in harmony with the spirit and purpose of the Zoning Code. The courts consistently have held that mere evidence that a zoned use is less financially rewarding than a proposed use is insufficient to justify a variance. *Valley View Civic Ass'n; Callowhill Center Assocs.; Conrail; Tantala.* Even if the circumstances of this case were deemed to meet the standard that unnecessary hardship will result if the variance is denied, Applicant also must satisfy the second *Valley View Civic Ass'n* criterion that the proposed use will not be contrary to the public interest. The multiple, substantial violations of all applicable provisions of Section 14–1604 entailed by Applicant's proposal demonstrate that it is contrary to the public interest. Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this 27th day of September, 2004, the order of the Court of Common Pleas of Philadelphia County affirming the order of the Zoning Board of Adjustment of the City of Philadelphia is reversed.