**SOCIETY CREATED TO REDUCE URBAN BLIGHT (SCRUB) and Mary Cawley Tracy, Appellants**

v.

**ZONING BOARD OF ADJUSTMENT OF THE CITY OF PHILADELPHIA, the City of Philadelphia, 2900 Ellsworth Associates and Clear Channel Outdoor, Inc.**

Commonwealth Court of Pennsylvania.

Argued Nov. 2, 2004.

Decided Dec. 6, 2004.

Samuel C. Stretton, West Chester, for appellants.

Cheryl L. Gaston, Philadelphia, for appellee, Zoning Bd. of Adjustment of the City of Philadelphia.

Glenn A. Weiner, Philadelphia, for appellee, Clear Channel Outdoor, Inc.

BEFORE: PELLEGRINI, Judge, FRIEDMAN, Judge, and JIULIANTE, Senior Judge.

OPINION BY Judge FRIEDMAN.

Society Created to Reduce Urban Blight (SCRUB) and Mary Cawley Tracy appeal from the December 11, 2003, order of the Court of Common Pleas of Philadelphia County (trial court), which affirmed the decision of the Zoning Board of Adjustment of the City of Philadelphia (Board) to grant a use variance for the erection of a non-accessory outdoor advertising sign. We reverse.

On May 14, 2002, 2900 Ellsworth Associates (Ellsworth) and Clear Channel Outdoor, Inc. (Clear Channel) applied for a permit to erect one free-standing, double-faced, illuminated, non-accessory sign on property located in a G–2 General Industrial zoning district and owned by Ellsworth. The sign was to be twenty (20) feet high and sixty (60) feet wide, i.e., 1,200 square feet on each face or 2,400 total square feet, and the top of the sign was to be ninety-eight (98) feet from grade. Currently, the property is being used for waste paper sorting and bailing and for the recycling of metal, glass and plastic products for use by subsequent producers, with accessory parking and loading. (Findings of Fact, Nos. 1–4.)

On June 19, 2002, the City's Department of Licenses and Inspections (Department) denied the permit application for the following reasons: (1) Ellsworth Street is less than sixty (60) feet in width, which means that signs with an area of 1,000 square feet are allowed under section 14–1604(5)(a) of the Philadelphia Code, but signs with an area of 2,400 square feet are not; (2) the lower edge of the sign cannot be more than twenty-five (25) feet from the surface of the closest roadway, (see section 14–1604(6)(a) of the Philadelphia Code); (3) the sign would be within 660 feet of a bridge over the Schuylkill River, which is not permitted in the district, (see section 14–1604(9)(a) of the Philadelphia Code); (4) the sign would be within 660 feet of an ingress and/or egress ramp for the Schuylkill Expressway, which is not permitted in the district (see section 14–1604(9)(b) of the Philadelphia Code); and (5) no existing sign of equal or greater area would be removed, (see section 14–1604(10)(a) of the Philadelphia Code). (Findings of Fact, No. 5.) Clear Channel filed an appeal with the Board seeking variances, and the Board held a public hearing on October 16, 2002. (Findings of Fact, Nos. 6–8.)

At the hearing, Clear Channel presented the testimony of Albert Tantala, a licensed professional engineer. Tantala testified that the property is irregularly shaped with frontages of 233, 427 and 130 feet.

The Schuylkill Expressway and some railroad tracks lie northwest of the property. The property is not within 300 feet of a residentially zoned or occupied structure; the property is not within 660 feet of any historic district, playground, public or private school or Fairmount Park; and the property is not within 500 feet of another sign. Although the property is within 660 feet of a ramp for ingress to I–76, the Schuylkill Expressway, the entrance to the ramp falls outside the 660 feet. Although the distance between the proposed sign and the roadway would be 475 feet, some existing signs are between one and two feet from the Schuylkill Expressway. The sign would not block any views of the city and would not adversely affect the public health, safety or welfare. Tantala opined that the location was particularly well suited for a billboard. (Findings of Fact, Nos. 11–19, 21–22.)

Patrick Green, a partner at Ellsworth, testified that the property was used as a paper recycling facility in 1994, but the facility was shut down, and the property was vacant from 1994 through 2001. The current tenant has expanded the old use to include cardboard, metal and plastic recycling. However, because the business is risky, the tenant has a right to cancel its lease. If the tenant were to leave the property, the rent received for the leasing of the sign would be the only income Ellsworth would derive from the property. (Findings of Fact, Nos. 23–24, 26.)

John Ballistreri, whose job duties with Clear Channel include finding locations for outdoor signs, testified that the location was ideal because it was in a heavy industrial area that was distant from any residential area. He also testified that Clear Channel would be willing to remove existing signs if a permit were issued for the proposed sign. By letter dated October 25, 2002, Clear Channel informed the Board that it would remove signs having a total sign area equal to or greater than 2,400 square feet. (Findings of Fact, Nos. 27–28, 30–31.)

Joseph P. Martin, a civil engineer, testified that the sign would be a distraction to motorists on the Schuylkill Expressway. Mary Tracy, Executive Director for SCRUB, testified in opposition to the sign. The Philadelphia City Planning Commission submitted a letter opposing variances for the sign. (Findings of Fact, Nos. 9–10, 32–33.)

On November 27, 2002, the Board granted the variances with the proviso that Clear Channel take down signs having a total sign area equal to or greater than 2,400 square feet. The Board concluded that Ellsworth and Clear Channel established that strict compliance with the zoning code would constitute an unnecessary hardship because of the risks associated with the recycling business. (Conclusions of Law, Nos. 8–9.) SCRUB and Tracy appealed to the trial court, which affirmed the Board's grant of variances under *Hertzberg v. Zoning Board of Adjustment of the City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998) (relating to dimensional variances). SCRUB and Tracy now appeal to this court.[1]

SCRUB and Tracy argue that the Board erred or abused its discretion in granting the variances inasmuch as Ellsworth and Clear Channel failed to establish unnecessary hardship. We agree.

Section 14–1802(1)(a) of the Philadelphia Code states that, in considering a

1. Where, as here, the trial court did not take additional evidence, our scope of review is limited to whether the Board committed a manifest abuse of discretion or an error of law. *Lench v. Zoning Board of Adjustment*, 852 A.2d 442 (Pa.Cmwlth.2004).

variance request, the Board shall consider, *inter alia,* whether, because of the particular physical surrounding, shape or topographical conditions of the specific structure or land involved, a literal enforcement of the provisions of Title 14 would result in unnecessary hardship. In *Mitchell v. Zoning Hearing Board,* 838 A.2d 819, 828 (Pa.Cmwlth.2003) (citations omitted), this court stated:

> In general, unnecessary hardship may be shown by demonstrating either that physical characteristics of the property are such that the property could not be used for the permitted purpose or could only be conformed to such purpose at a prohibitive expense, or that the characteristics of the area are such that the lot has either no value or only a distress value for any permitted purpose. In *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh,* 554 Pa. 249, 721 A.2d 43 (1998), however, the Supreme Court of Pennsylvania set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance. Under *Hertzberg,* the courts may consider multiple factors in determining whether the applicant established unnecessary hardship for a dimensional variance, including the cost of the strict compliance with the zoning ordinance, the economic hardship that will result from denial of a variance, and the characteristics and conditions of the surrounding neighborhood.

In *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment,* 831 A.2d 1255, 1261 (Pa.Cmwlth. 2003), *appeal denied,* 577 Pa. 739, 848 A.2d 931 (2004), this court stated, "We have repeatedly held that variances from Section 14–[1]604 of the [Philadelphia] Code are not dimensional." This is because section 14–1604 of the Philadelphia Code prohibits the **use** of property for

non-accessory outdoor advertising signs unless its requirements are met. *See id.; see also Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment,* 787 A.2d 1123 (Pa.Cmwlth.2001) and *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment,* 772 A.2d 1040 (Pa.Cmwlth.2001), *appeal denied,* 574 Pa. 778, 833 A.2d 146 (2001), *cert. denied sub nom., Conrail c/o Transportation Displays, Inc. v. Society Created to Reduce Urban Blight,* 539 U.S. 959, 123 S.Ct. 2652, 156 L.Ed.2d 658 (2003). Thus, the question before us is whether Ellsworth and Clear Channel established an unnecessary hardship sufficient to obtain a use variance.

Here, the Board found that the property is currently being used for waste paper sorting and bailing and for the recycling of metal, glass and plastic products. Thus, Ellsworth and Clear Channel did not demonstrate that physical characteristics of the property are such that the property cannot be used for a permitted purpose, or that the characteristics of the area are such that the property has no value with respect to a permitted use.

Because the Board erred in concluding that Ellsworth and Clear Channel established an unnecessary hardship for a use variance, we reverse.

### ORDER

AND NOW, this 6th day of December, 2004, the order of the Court of Common Pleas of Philadelphia County, dated December 11, 2003, is hereby reversed.