# 1700 COLUMBUS ASSOCIATES, LLC

v.

# CITY OF PHILADELPHIA, ZONING BOARD OF ADJUSTMENT, Appellant.

Commonwealth Court of Pennsylvania.

Argued June 10, 2009.
Decided July 24, 2009.

---

**3.** Former Section 10.1(a) of the Sunshine Act now appears at 65 Pa.C.S. § 710.1(a).

Andrew S. Ross, Philadelphia, for appellant.

Ronald J. Patterson and Glenn A. Weiner, Philadelphia, for appellee.

BEFORE: SIMPSON, Judge, and FRIEDMAN, Senior Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge SIMPSON.

In this zoning appeal, the City of Philadelphia (City) asks whether the Court of Common Pleas of Philadelphia County (trial court) erred in granting 1700 Columbus Associates, LLC's (Applicant) request for a variance. Applicant sought to change the use of its existing, permitted outdoor advertising sign from an accessory adver-

tising message[1] to a non-accessory advertising message.[2] The Zoning Board of Adjustment of the City of Philadelphia (ZBA) denied Applicant's request on the ground Applicant did not prove it would suffer unnecessary hardship absent the grant of the variance. On Applicant's appeal, however, the trial court reversed the ZBA's decision and granted the variance. Because we agree with the ZBA that Applicant failed to prove the requisite unnecessary hardship to warrant the grant of the variance, we reverse the trial court and reinstate the ZBA's decision.

Applicant, which is comprised of a partnership between Theodore Pagano and Nicholas Sponara, owns property located at 73–83 Moore Street (a/k/a 1731–1743 South Water Street), between Swanson and Water Streets, adjacent to the elevated roadway of Interstate 95 in the City (subject property). The subject property, which lies in a G–2 Industrial zoning district, is improved with a commercial building, which was formerly occupied as a showroom for retailer Mattress Giant. While not entirely clear, it appears the building on the subject property is now used by a day care or preschool. The subject property is also improved with a public parking lot. In addition, there is a 1,000 square-foot, free-standing, double-faced, accessory sign, which advertises parking on the subject property.

Applicant also owns a separate, but neighboring property located at 1700 South Columbus Boulevard (across Swanson Street from the subject property), which it rents to a tenant that operates an "adult cabaret" known as Club Risqué. Pagano, a partner in Applicant's company, is apparently a "consultant" for Club Risqué. Reproduced Record (R.R.) at 20a.

The record reveals, as early as 1989, a request was made for a free-standing, double-faced, *non-accessory* advertising sign on the subject property. That request was denied by the City's Department of Licenses and Inspections (L & I). R.R. at 6a–7a.

In 2005, L & I issued Applicant a permit for a free-standing, double-faced, accessory sign for "MATTRESS GIANT SIGNS." R.R. at 9a. The permit also allowed Applicant to advertise the parking lot on the subject property with a sign reading "PARKING" with an arrow pointing down. *Id.*

In November 2006, Applicant applied to L & I for a zoning permit and/or a use registration permit to change the use of the existing sign from accessory to non-accessory advertising. L & I refused the application on the grounds the proposed use did not comply with Section 14–1604 of the City of Philadelphia Zoning Code (Zoning Code) ("Outdoor Advertising and Non–Accessory Advertising Controls"). Specifically, L & I determined: (i) the proposed sign would be located within 500 feet of an existing outdoor advertising sign, which is

---

**1.** Section 14–102(123)(b) of the Philadelphia Zoning Code (Zoning Code) defines an accessory sign as follows: *Accessory Sign or On–Premise Sign.* A sign containing copy which directs attention to information, identification or advertisements strictly incidental to a lawful use of the premises on which the sign is located. This includes signs or devices indicating the business transacted; services rendered; goods sold or produced on the premises; and, name or emblem of the person, firm, institution, organization or activity occupying the premises.

**2.** Section 14–102(123)(k) of the Zoning Code defines a non-accessory sign as follows: *Outdoor Advertising or Non–Accessory Sign.* A sign which directs attention to a business, industry, profession, commodity, service, organization, activity, institution, product, or entertainment *neither sold, located nor offered* upon the property where the sign is situated.

prohibited; (ii) the sign would be located within 660 feet of the ingress and/or egress ramps of I–95, which is prohibited; (iii) the sign would be located within 660 feet of the outward edge of the right-of-way of lines of I–95, which is prohibited; (iv) any outdoor advertising sign exceeding 1,000–square feet in area per support structure fronting on streets of less than 60–feet in width are prohibited; (v) no general outdoor advertising sign of equal or greater size is proposed to be removed as required; and, (vi) the sign is within 660 feet of a recreation center under the jurisdiction of the City's Department of Recreation, which is prohibited. Applicant appealed to the ZBA, seeking a variance from these provisions. Hearings ensued before the ZBA in January and September 2007.

At the outset of the first hearing, the ZBA's chairman forcefully verbalized his frustration with the fact that the property utilized by Club Risqué, which Applicant also owns (but which is not involved in this matter), has an illegal sign on its premises. Applicant then presented some brief testimony by Pagano as well as the testimony of Albert M. Tantala, P.E, a civil engineer, who opined the proposed non-accessory advertising sign would not adversely affect the public interest. Applicant also submitted documentary evidence, including photographs of the subject property and the surrounding area as well as its prior application and permit for its existing, accessory advertising sign. Despite pointing out it was only seeking to change the advertising copy on the sign at issue, Applicant did not dispute a variance was needed from the Zoning Code's billboard regulations. Notes of Testimony (N.T.), 9/5/07, at 32; R.R. at 67a.

Additionally, various witnesses testified briefly in opposition to and in support of Applicant's request. Among these witnesses was Mary Tracey, Executive Director of the Society Created to Reduce Urban Blight (SCRUB), who testified Applicant was previously denied its request for a non-accessory advertising sign on the subject property and no hardship existed that would justify the grant of a variance. Additionally, the objectors presented documentary evidence, including a petition generated by nearby residents in opposition to Applicant's request as well as photographs of the subject property and the surrounding area.

Ultimately, the ZBA issued an opinion in which it denied Applicant's variance request. The ZBA determined Applicant did not meet its burden to obtain a variance because granting the variance would create an "overuse" for the subject property, and Applicant did not provide any evidence of unnecessary hardship. ZBA Op., Concl. of Law No. 11; R.R. at 111a. Applicant appealed to the trial court.

■ Without taking additional evidence, the trial court issued an order reversing the ZBA's decision. The City appealed to this Court.[3]

The trial court subsequently issued a three-page opinion in support of its order. In its opinion, the trial court stated the ZBA abused its discretion in denying the variance in that there were "glaring errors in the [ZBA's] findings of fact and conclusions of law...." Tr. Ct., Slip Op. at 2; R.R. at 130a. The trial court cited *Hertzberg v. Zoning Board of Adjustment of City of Pittsburgh*, 554 Pa. 249, 721 A.2d 43 (1998), for the factors to be considered in determining whether Applicant proved

3. Because the parties presented no additional evidence after the ZBA's decision, our review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. *Allegheny W. Civic Council, Inc. v. Zoning Bd. of Adjustment of City of Pittsburgh*, 547 Pa. 163, 689 A.2d 225 (1997).

the requisite hardship. The trial court then stated the ZBA committed errors in its findings and in its application of the law to the facts. The entire analysis of the trial court follows:

First, the [ZBA] erroneously found that the [subject property] was used as a mattress showroom with the sign and parking lot used as access thereto. The mattress showroom had moved from the [subject] property. This is an error because it directly applies to the hardship issues the [ZBA] would consider in granting a variance.

Second, the [ZBA] erroneously found that there is a strip club at the [s]ubject [p]roperty. Ignoring the obvious contradiction to the finding there is a mattress showroom on the [subject property], this is an error also because it directly applies to hardship issues the [ZBA] would consider in granting a variance.

Third, and perhaps most important, is the [ZBA's] failure to consider that the sign was already in existence in determining the hardship. The [ZBA] states that a non-accessory sign use for the sign would violate § 14–1604(6)(b) of the [Zoning] Code. The accessory use sign does not violate the [Zoning] Code. The [ZBA] failed to take into account that [Applicant] is merely changing the writing on a sign that already exists. The difficulty of moving the sign further away from ... I–95 so it complies with § 14–1604(6)(b) falls directly into the *Hertzberg* factors, particularly the economic feasibility or the inability to co[n]vert or use the [subject] property. These factors should have been considered by the [ZBA]. The failure to do so is an abuse of discretion.

Tr. Ct., Slip Op. at 2–3; R.R. at 130a–31a.

The City's appeal is now before us for disposition. Among other contentions, the City argues an applicant for a variance for an outdoor advertising sign cannot establish hardship under a dimensional variance standard rather than a use variance standard. The City further contends that an applicant cannot prove the requisite hardship for a use variance where there is no evidence the property would be rendered valueless absent the grant of the variance. It also maintains an applicant cannot obtain a variance where it fails to satisfy any of the other necessary criteria required to obtain a variance.

### I.

The City asserts this case is one of a long line of common confrontations between zoning regulations enacted by a legislative body for the greater good, and the desire of an individual property owner to maximize income derived from its property.

The City argues the subject property was and remains commercially viable but, as characterized in Pagano's testimony, is underperforming. *See* R.R. at 40a (the amount of income generated by the parking lot on the subject property was "disappointing"). The City maintains, under Pennsylvania law, "underperforming" is not recognized as hardship and does not support the grant of a variance.

The City contends Applicant is a property owner who is dissatisfied with the amount of income the subject property is currently generating while it operates within the confines of permissible zoning. It asserts Applicant, which built an *accessory* sign after several failed attempts to obtain an outdoor advertising sign permit, then sought to convert the billboard from accessory to non-accessory.

The City maintains the requirements for a variance to convert an accessory sign into an outdoor advertising sign have been frequently addressed by this Court and are well-settled. It asserts such conver-

sion requires a use variance, not a dimensional variance, and requires an applicant clearly and convincingly show all the required elements for a variance, including, most importantly, unnecessary hardship resulting from the property's unique physical characteristics.

With regard to the hardship criterion, the City points out that Applicant does not use the subject property itself; rather, it rents to commercial tenants. The City notes the subject property includes a small parking lot and a large parking lot maintained primarily for Club Risqué patrons. The City asserts that at the time Applicant applied for the outdoor advertising permit, the tenant on the subject property was a mattress store, and, at present, a child care center rents the building. Disputing Applicant's contention that it proved hardship because the mattress store was "compelled" to move to a "better" location, the City highlights the lack of record support for the contention. The City asserts the only evidence on this point was Pagano's hearsay statement as to why *he believed* the mattress store moved. The City points out Applicant presented no evidence of its attempts to lease, market, improve or otherwise seek tenants or sources of income on the subject property. In short, the City maintains, Applicant presented no evidence that the uses already permitted render the subject property valueless or incapable of being leased.

As for the trial court's statement that it is appropriate to apply the *Hertzberg* dimensional variance standard here, the City maintains this is clearly erroneous as this Court repeatedly holds that variances from the Zoning Code's billboard regulations are in the nature of *use* rather than *dimensional* variances. *See Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of City of Phila.*, 831 A.2d 1255 (Pa.Cmwlth.2003) *(2900 Ellsworth Assocs.)*, 862 A.2d 745 (Pa.Cmwlth. 2004); *Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of City of Phila.* *(Appeal of Amtrak Nat'l R.R. Passenger Corp.)*, 787 A.2d 1123 (Pa.Cmwlth.2001).

However, the City argues, even if the dimensional variance standard applies here, Applicant did not satisfy this standard as this Court consistently rejects dimensional variance requests where no hardship is shown.[4] We agree with the City.

More specifically, with regard to the standards required to obtain a variance from the Zoning Code's outdoor advertising regulations, in *2900 Ellsworth Associates*, this Court, speaking through Judge (now Senior Judge) Friedman, explained:

Section 14–1802(1)(a) of the [Zoning] Code states that, in considering a variance request, the [ZBA] shall consider, *inter alia*, whether, because of the particular physical surrounding, shape or topographical conditions of the specific structure or land involved, a literal enforcement of the provisions of Title 14 would result in unnecessary hardship. In *Mitchell v. Zoning Hearing Bd. of Borough of Mount Penn*, 838 A.2d 819, 828 (Pa.Cmwlth.2003) (citations omitted), this court stated:

In general, unnecessary hardship may be shown by demonstrating either that physical characteristics of the property are such that the property could not be used for the permitted purpose or could only be conformed to such purpose at a prohibitive expense,

---

**4.** *See, e.g., Twp. of E. Caln v. Zoning Hearing Bd. of E. Caln Twp.*, 915 A.2d 1249 (Pa. Cmwlth.2007); *Yeager v. Zoning Hearing Bd. of City of Allentown*, 779 A.2d 595 (Pa. Cmwlth.2001); *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment (Appeal of Albert M. Tantala)*, 771 A.2d 874 (Pa.Cmwlth. 2001).

or that the characteristics of the area are such that the lot has either no value or only a distress value for any permitted purpose. In [*Hertzberg*], however, the Supreme Court of Pennsylvania set forth a more relaxed standard for establishing unnecessary hardship for a dimensional variance, as opposed to a use variance. Under *Hertzberg,* the courts may consider multiple factors in determining whether the applicant established unnecessary hardship for a dimensional variance, including the cost of the strict compliance with the zoning ordinance, the economic hardship that will result from denial of a variance, and the characteristics and conditions of the surrounding neighborhood.

In *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Board of Adjustment [(Outdoor Works)],* 831 A.2d 1255, 1261 (Pa.Cmwlth.2003), *appeal denied,* 577 Pa. 739, 848 A.2d 931 (2004), this court stated, "We have repeatedly held that variances from Section 14–[1]604 of the [Philadelphia] [Zoning] Code are not dimensional." This is because section 14–1604 of the Philadelphia [Zoning] Code prohibits the **use** of property for non-accessory outdoor advertising signs unless its requirements are met. *See id.; see also [Appeal of Amtrak Nat'l R.R. Passenger Corp.]* and [*Soc'y Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of City of Phila. [(Appeal of Conrail)],* 772 A.2d 1040 (Pa.Cmwlth.2001), *appeal denied,* 574 Pa. 778, 833 A.2d 146 (2001), *cert. denied sub nom., Conrail c/o Transp. Displays, Inc. v. Soc'y Created to Reduce Urban Blight,* 539 U.S. 959, 123 S.Ct. 2652, 156 L.Ed.2d 658 (2003) ].
*2900 Ellsworth Assocs.,* 862 A.2d at 747–48 (emphasis in original).

■ As in *2900 Ellsworth Associates,* the question before us is whether Appli-cant established an unnecessary hardship sufficient to obtain a *use* variance. As a result, the trial court clearly erred to the extent it determined Applicant was entitled to the benefit of the relaxed hardship standard set forth in *Hertzberg.*

■ Here, the ZBA determined "Applicant has *not* provided evidence of hardship." ZBA Op., Concl. of Law. No. 11; R.R. at 111a (emphasis in original). While the ZBA erroneously stated the subject property was currently used as a mattress showroom, since it is clear that business did not exist on the subject property at the time of the ZBA hearings, the ZBA also stated the subject property is used for "accessory parking and accessory signage; *there is a private parking lot at the [s]ubject [p]roperty ....*" ZBA Op., Finding of Fact (F.F.) No. 3 (emphasis added). Additionally, although the timing is unclear from the record, it appears that at some point during the ZBA proceedings in this matter, Applicant obtained a variance to use the subject property for a day care/pre-school. As such, Applicant did not prove the physical characteristics of the subject property are such that the property cannot be used for a permitted purpose, or that the characteristics of the area are such that the property has no value with respect to a permitted use. *See 2900 Ellsworth Assocs.* (where property used for waste paper sorting and bailing and for recycling of metal, glass and plastic products, the applicants did not show unnecessary hardship to justify a variance for a non-accessory advertising sign).

Additionally, although Pagano testified income generated by the parking lot use "was extremely disappointing," R.R. at 40a, this evidence is not sufficient to establish hardship. *See, e.g., Wilson v. Plumstead Twp. Zoning Hearing Bd.,* 594 Pa. 416, 936 A.2d 1061 (2007) (mere evidence that zoned use is less financially rewarding

than proposed use is insufficient to justify a variance). Further, while Pagano did testify Mattress Giant, a retailer formerly located on the subject property, moved because "[t]hey weren't doing enough business and they went to a better location," R.R. at 38a, Pagano also acknowledged the subject property has at least some economically viable use as it was used as a parking lot (apparently for Club Risqué patrons) at the time of the ZBA proceedings. R.R. at 17a. Consequently, we discern no error in the ZBA's determination that Applicant did not establish the hardship necessary to obtain a use variance.

Further, although Applicant repeatedly reiterates that it only seeks to change the nature of the advertising copy on the billboard at issue, before the ZBA, Applicant did not dispute a variance was needed from the Zoning Code's outdoor advertising regulations. R.R. at 67a. *Cf. Soc'y Created to Reduce Urban Blight. v. Zoning Bd. of Adjustment of City of Phila. (Appeal of Gillespie)*, 921 A.2d 536 (Pa. Cmwlth.2007), *appeal granted*, 598 Pa. 107, 954 A.2d 567 (2008) (where applicant sought to erect non-accessory outdoor advertising sign in place of accessory sign that had fallen into disrepair and nonaccessory sign violated Section 14–1604 of the Zoning Code, applicant was required to obtain variance); *Soc'y Created to Reduce Urban Blight v. Zoning Bd. of Adjustment (Appeal of Callowhill Ctr.)*, 804 A.2d 116 (Pa.Cmwlth.2002) (where applicant sought to convert existing non-accessory outdoor advertising sign to non-accessory "wall wrap" identical in size to pre-existing sign, applicant was required to obtain variance where proposal did not comply with Section 14–1604).

Of further note, by denying Applicant's request to construct a non-accessory advertising sign on the subject property, which already is improved with a parking lot (and apparently a day care center or pre-school), the ZBA prevented Applicant's attempts to use the subject property for more than one principal use. This is a goal commonly sought by zoning ordinances so as to promote orderly and harmonious development. *See Adams Outdoor Adver., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469 (Pa.Cmwlth. 2006), *appeal denied*, 592 Pa. 768, 923 A.2d 1175 (2007) (citing 1 Robert S. Ryan, PENNSYLVANIA ZONING LAW AND PRACTICE, § 4.3 (2001 ed. & 2004 supp.) ("Multiple Use," "Principal Use Requirements")). To that end, Section 14–113(1) of the Zoning Code (entitled "Permitted Structures on a Lot."), specifically states: "(1) Unless otherwise specified under the provisions of this Title, *only one principal structure or use shall be permitted on a lot.*" (Emphasis added).

Additionally, although Applicant acknowledges this Court's line of decisions that hold that variances from the Zoning Code's outdoor advertising regulations are in the nature of use rather than dimensional variances, it suggests an *en banc* panel of this Court should overrule those decisions as they conflict with cases from the Supreme Court as well as this Court. We rejected this precise argument, which relied on the same cases upon which Applicant now relies, in *Society Created to Reduce Urban Blight (SCRUB) v. Zoning Bd. of Adjustment of City of Philadelphia*, 858 A.2d 679, 684–86 (Pa.Cmwlth.2004), *appeal dismissed as improvidently granted*, 587 Pa. 303, 899 A.2d 352 (2006), stating:

> [The] [a]pplicant [argues] that the evidence presented before the [ZBA] demonstrated that the property is not economically viable. [The] [a]pplicant contends that SCRUB's dismissal of this evidence as proof of nothing more than financial hardship ignores Pennsylvania Supreme Court decisions recognizing the right of an owner trying to redevelop blighted or obsolete property

to an economically viable use. In *Halberstadt v. Borough of Nazareth,* 546 Pa. 578, 687 A.2d 371 (1997), the Supreme Court reversed this Court's reversal of a grant of variances to the owner of an old "fortress-like" building. The zoning hearing board accepted testimony that it was not feasible to use the property for a parking garage or a one-story apartment building, and the court held that property owners are not required to reconstruct a building to a conforming use regardless of the financial burden.

In *Allegheny West Civic Council, Inc. v. Zoning Board of Adjustment of the City of Pittsburgh,* 547 Pa. 163, 689 A.2d 225 (1997), the owner secured a variance to use its property as an open air parking lot in an area used for residential, commercial and institutional purposes. The site was contaminated in a way that would require as much as $3 million to remediate plus annual monitoring costs before it could be used for residential building. The Supreme Court reversed this Court's reversal of grants of variances. The court noted that showing that a property is valueless without a variance is one way to establish unnecessary hardship, although the court expressly rejected requiring such a showing, and it held that there was substantial evidence that the owner could not use the property for a permitted purpose nor conform it without prohibitive cost. Applicant also cites *Hertzberg* where an owner was renovating a vacant former bank for a shelter for homeless women. The Supreme Court held that multiple factors may be considered to justify a variance. In *Vitti v. Zoning Board of Adjustment of City of Pittsburgh* 710 A.2d 653, 658 (Pa.Cmwlth.1998), this Court stated that "where blighted or dilapidated conditions exist in urban areas, and where the applicant for a variance has under-

taken efforts to remediate or renovate those areas for a salutary, productive purpose, a slight relaxation, or less stringent application, of the variance criteria" may be the only way that the land is put to beneficial use....

Pointing out that outdoor advertising signs are expressly permitted uses under G–2 zoning, Section 14–508(1)(aa) of the Zoning Code, [the] [a]pplicant asserts that it meets the *Hertzberg* standard of proof applicable to dimensional variances, *i.e.,* one that seeks only a "reasonable adjustment of the zoning regulations in order to utilize the property in a manner consistent with the applicable regulations," 554 Pa. at 257, 721 A.2d at 47. Although this Court has characterized limitations under Section 14–1604 as creating "floating zone" or "buffer zone" use restrictions, [the] [a]pplicant finds significant the statement in *Kennedy v. Upper Milford Township Zoning Hearing Board,* 575 Pa. 105, 117 n. 16, 834 A.2d 1104, 1111 n. 16 (2003), that a setback provision relating to the height of a transmission tower was dimensional and subject to *Hertzberg* analysis. [The] [a]pplicant suggests that cases such as *Daley v. Zoning Hearing Board of Upper Moreland Township,* 770 A.2d 815 (Pa.Cmwlth.2001), where the Court analyzed a grant of a variance to permit a reduced buffer zone between a church parking lot and neighboring property as a dimensional variance, indicate a split among panels of this Court in applying *Hertzberg.* ...

The Court is not persuaded by [the] [a]pplicant's assertions. First, there is no question, and there has never been any split in the Court's decisions on this point, that variances from the provisions of Section 14–1604 of the Zoning Code are use variances as opposed to dimensional variances subject to the lesser standard of proof of unnecessary hardship described in *Hertzberg. Conrail;*

*Outdoor Works.* Despite [the] [a]pplicant's arguments to the contrary, the fact remains that Section 14–1604 was enacted as part of the Zoning Code, and it does embody the public policy of the City ... regarding outdoor advertising signs.

It is important to understand precisely what [the] [a]pplicant is proposing. Although [the] [a]pplicant asserts repeatedly that commercial and industrial development of the subject property is not feasible because of adverse environmental conditions and other constraints[,] ... [the] [a]pplicant is not proposing to abandon its efforts to continue such development. This is not a case such as [*Poster Advertising Co. v. Zoning Board of Adjustment*, 408 Pa. 248, 182 A.2d 521 (1962) ] where most of a residential lot was taken for road construction and the remainder would not have been suitable for any productive permitted use, and, as a result, the Supreme Court held that the owner established unnecessary hardship (and also lack of adverse impact on the public interest) and approved a variance for erection of two billboards as the use of the property. Here[,] the owner intends to proceed with development of the existing property, and the rental income from the proposed signs is to be applied to furthering that development.

To raise revenue to advance its permitted but difficult development, [the]

[a]pplicant is proposing the erection of two very large and high outdoor advertising signs that substantially violate every provision of Section 14–1604 that applies to them. Contrary to its contention, outdoor advertising signs are not necessarily permitted in the G–2 Industrial district. Rather, Section 14–508, relating to "G–2" General Industrial District, lists as a permitted use "(1)(aa) Outdoor advertising signs *as permitted in § 14–1604 of this Title.*" (Emphasis added.) As the [ZBA] candidly enumerated, the proposed signs violate provisions relating to proximity to other signs or to residentially zoned property, maximum sign area per structure, height above the roadway, number of signs permitted on a lot, proximity to ingress and egress ramps of the Delaware Expressway, removal of equal or greater sign area and prohibition of such signs in National Historic Districts. The [ZBA's] characterization of approval of this proposal as "minor relief" is unjustified.

■ Based on the above-quoted excerpt, it is clear we squarely rejected the arguments Applicant presents in support of its assertions that the relaxed *Hertzberg* standard should apply to cases in which variances are sought from § 14–1604 of the Zoning Code's billboard regulations. As such, the identical arguments presented by Applicant here fail.[5]

---

**5.** Because we agree with the City that Applicant did not prove the requisite unnecessary hardship, we need not address at length the City's arguments that Applicant did not satisfy the remaining criteria required to obtain a variance or that the trial court erred in reversing the ZBA based on two erroneous statements in the ZBA's factual findings. Nevertheless, as to the City's argument that Applicant failed to show its proposed use would not adversely affect the public interest, we note that in *SCRUB*, this Court explained:

Section 14–1802 of the Zoning Code, relating to criteria for granting variances, includes as a required consideration "(1)(k) that the grant of the variance will be in harmony with the spirit and purpose of this Title[.]" A grant of the variances requested in the present case could not possibly be in harmony with the spirit and purpose of the Zoning Code.... Even if the circumstances of this case were deemed to meet the standard that unnecessary hardship will result if the variance is denied, [the] [a]pplicant also must satisfy the second *Valley View*

## II.

For its part, Applicant argues the ZBA's refusal to permit certain messages, while permitting others, on the existing, legal sign serves no purpose under the test set forth by the U.S. Supreme Court in *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557, 100 S.Ct. 2343, 65 L.Ed.2d 341 (1980), for regulating commercial speech. There, the Court determined the validity of government restrictions on commercial speech by applying a four-part test that asks: (1) whether the regulated commercial speech concerns lawful activity in a manner that is not misleading; (2) whether the restriction seeks to implement a substantial governmental interest; (3) whether it directly advances that interest, and (4) whether it reaches no further than necessary to accomplish the given objective. *Id.*

Applicant asserts Section 14–1604 of the Zoning Code, as applied here, cannot pass constitutional muster because it does not meet the requirements of parts (3) and (4) of the *Central Hudson Gas* test. Specifically, it contends that when applied to prohibit a change in content on the existing sign, § 14–1604 does not advance directly the purported governmental interests in traffic safety and aesthetics and reaches further than necessary to accomplish these given objectives.

Citing *World Wide Rush, LLC v. City of Los Angeles*, 563 F.Supp.2d 1132 (C.D.Cal. 2008), Applicant argues the manner in which Section 14–1604 was applied here impermissibly discriminates against certain types of commercial speech and speakers. Applicant thus maintains that the limitation on the types of advertising messages that are displayed on the existing sign violates the First Amendment. For this alternative reason, Applicant asserts, we should affirm the trial court. We reject Applicant's assertions on this point for several reasons.

■ First, our review of the notes of testimony before the ZBA reveals Appli-

*Civic Ass'n[v. Zoning Board of Adjustment*, 501 Pa. 550, 462 A.2d 637 (1983)] criterion that the proposed use will not be contrary to the public interest. The multiple, substantial violations of all applicable provisions of Section 14–1604 entailed by [the] [a]pplicant's proposal demonstrate that it is contrary to the public interest....

*SCRUB*, 858 A.2d at 686. Here, as in *SCRUB*, Applicant's proposal violates at least six of the provisions in Section 14–1604 of the Zoning Code. Thus, as in *SCRUB*, Applicant's proposal is contrary to the public interest.

Further, as to the City's argument that the trial court erred in reversing the ZBA's decision based on the two minor errors in the ZBA's factual findings, we note that pursuant to Section 754(b) of the Local Agency Law, 2 Pa.C.S. § 754(b), a reviewing court may properly reverse where it determines constitutional rights were violated, an error of law was committed, the procedure before the agency was contrary to statute, or the agency's *necessary findings of fact* were not supported by substantial evidence. *See In re Thompson*,

896 A.2d 659 (Pa.Cmwlth.2006), *appeal denied*, 591 Pa. 669, 916 A.2d 636 (2007).

Here, the ZBA incorrectly indicated that, at the time of the ZBA proceedings, the subject property was used for a mattress showroom. F.F. No. 3. In addition, the ZBA made a finding that "Applicant's representative and co-owner, [Pagano] testified that *the strip club at the [s]ubject [p]roperty* is owned by his tenant and that he is only a consultant." F.F. No. 13 (emphasis added). The trial court correctly stated that the ZBA erred in finding that a mattress showroom and an adult cabaret are located on the subject property as it is clear the mattress retailer went out of business prior to the ZBA hearings and the adult cabaret is actually across the street from the subject property. However, these findings were not necessary to the ZBA's ultimate and critical determination that Applicant did not provide evidence of hardship. As noted above, the ZBA's ultimate determination that Applicant failed to satisfy the requisite unnecessary hardship criterion is supported by the record and in accordance with the law.

cant did not raise this issue before the ZBA. In addition, although Applicant briefly mentioned this issue at oral argument before the trial court, it did not seek to present additional evidence before the trial court in order to develop this issue. We encountered the same situation in *Appeal of Callowhill Center.* There, we explained:

> Initially, we note that [the] [a]pplicants did not challenge the constitutionality of the [Z]oning [C]ode before the [ZBA]. They argued only that a variance should be granted. After [the] [o]bjectors appealed the grant of the variance to the trial court, [the] [a]pplicants questioned the validity of the [Z]oning [C]ode as a prior restraint on commercial speech and as exclusionary zoning....
>
> Here, the [ZBA] was the fact finder. [The] [a]pplicants failed to raise their constitutional arguments before the [ZBA]. As a result, the [ZBA] was unable to compile an adequate record for determination of those issues. Likewise, the record reveals no request that the trial court permit enlargement of the record. [Section 1005–A of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended,* added by Section 101 of the Act of December 21, 1988, P.L. 1329, 53 P.S. § 11005–A.]. The City ... was not aware of the attack on the [Z]oning [C]ode at a time when it could create a record in defense of constitutionality. Consequently, the trial court found that the arguments were waived. We agree that [the][a]pplicants waived all arguments not raised before the [ZBA], including the argument that the [Z]oning [C]ode is unconstitutional.

*Appeal of Callowhill Ctr.,* 804 A.2d at 119.

Like the applicants in *Appeal of Callowhill Center,* Applicant here did not raise its constitutional challenge before the ZBA, thus depriving the ZBA an opportunity to make a full record on this issue and preventing the City from making a record in defense of the challenged Zoning Code provisions. As such, as in *Appeal of Callowhill Center,* we conclude Applicant waived its constitutional challenge.

■ Even if not waived, however, Applicant's argument fails. To that end, the City correctly points out that in *Landau Advertising Co., Inc. v. Zoning Board of Adjustment of City of Philadelphia,* 387 Pa. 552, 128 A.2d 559 (1957), our Supreme Court, examining Philadelphia's then-existing zoning code, held the erection of a non-accessory advertising sign on the roof of a drugstore in a commercial zone would not be accessory and incidental to the primary business use. The Court also rejected a billboard company's contention that the fact that the zoning code permitted accessory advertising signs, as opposed to non-accessory signs, rendered the zoning code unconstitutional or illegally discriminative. After reviewing cases from several other jurisdictions, our Supreme Court looked to the Supreme Court of New Jersey's decision in *United Advertising Corp. v. Borough of Raritan,* 11 N.J. 144, 93 A.2d 362 (1952), and explained:

> In [*United Advertising*], the Supreme Court of New Jersey considered the validity of a zoning ordinance which prohibited any sign which directs attention to a business, commodity, service or entertainment conducted, sold or offered elsewhere than upon the premises. The Court, speaking through Mr. Justice Brennan (now of the United States Supreme Court) rejected plaintiff's argument that the ordinance constituted unlawful discrimination by excluding advertising signs in all districts while permitting such signs directing attention to businesses on the premises, saying, 93 A.2d at pages 365, 366: 'The business sign is in actuality a part of the business

itself, just as the structure housing the business is a part, of it, and the authority to conduct the business in a district carries with it the right to maintain a business sign on the premises subject to reasonable regulations in that regard as in the case of this ordinance. Plaintiff's placements of its advertising signs, on the other hand, are made pursuant to the conduct of the business of outdoor advertising itself, and in effect what the ordinance provides is that this business shall not to that extent be allowed in the borough. *It has long been settled that the unique nature of outdoor advertising and the nuisances fostered by billboards and similar outdoor structures located by persons in the business of outdoor advertising, justify the separate classification of such structures for the purposes of governmental regulation and restriction.*

*Landau,* 387 Pa. at 558–59, 128 A.2d at 562 (citations omitted).

Of further note, more recently this Court addressed the validity of the distinction between on-site and off-site advertising signs in a case in which a billboard company challenged a zoning ordinance provision that required removal of off-premises advertising signs on land on which development was proposed. *See Adams Outdoor.* Addressing the permissibility of the on-site/off-site advertising distinction, we explained:

[T]o the extent [the] [a]pplicant suggests that the [zoning ordinance] creates an impermissible distinction between on-site and off-site advertising signs, many courts, including the United States Supreme Court, hold there is nothing novel or constitutionally infirm about the use of the on-site/off-site distinction. *See* [*Metromedia, Inc. v. City of San Diego,* 453 U.S. 490, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) ]; *Clear Channel Outdoor, Inc., A Delaware Corp. v. City of Los Angeles,* 340 F.3d 810 (9th Cir.2003). In

*Metromedia,* a landmark United States Supreme Court decision on the regulation of outdoor advertising, a plurality of the Court found it permissible to distinguish between on-site and off-site commercial signs, explaining:

[W]hether onsite advertising is permitted or not, the prohibition of offsite advertising is directly related to the stated objectives of traffic safety and esthetics. This is not altered by the fact that the ordinance is underinclusive because it permits onsite advertising .... [T]he city may believe that offsite advertising, with its periodically changing content, presents a more acute problem than does onsite advertising .... San Diego has obviously chosen to value one kind of commercial speech—onsite advertising—more than another kind of commercial speech—offsite advertising. The ordinance reflects a decision by the city that the former interest, but not the latter, is stronger than the city's interests in traffic safety and esthetics .... As we see it, the city could reasonably conclude that a commercial enterprise—as well as the interested public—has a stronger interest in identifying its place of business and advertising the products or services available there than it has in using or leasing its available space for the purpose of advertising commercial enterprises located elsewhere. [It does not follow from the fact that the city has concluded that some commercial interests outweigh its municipal interests in this context that it must give similar weight to all other commercial advertising. Thus, offsite commercial billboards may be prohibited while onsite commercial billboards are permitted.]

*Metromedia,* 453 U.S. .at 511–12, 101 S.Ct. 2882 (citations omitted). Thus, the

[t]ownship's decision to require removal of off-site, as opposed to on-site advertising signs, does not render [the relevant section of the zoning ordinance] invalid. *Id.*

*Adams Outdoor,* 909 A.2d at 479. Additionally, in *Adams Outdoor,* we rejected the applicant's argument that the zoning ordinance provision constituted an impermissible regulation on commercial speech under *Central Hudson Gas.* More particularly, we stated:

> In [*Atlantic Refining & Marketing Corp. v. Board of Commissioners of York Township,* 147 Pa.Cmwlth. 418, 608 A.2d 592, 595 n. 5 (1992),] we rejected a similar argument, explaining:
>
>> [The appellant] further raises a constitutional issue of First Amendment protection given to commercial speech, citing [*Central Hudson Gas* ]. However, Central *Hudson* Gas and its progeny are not helpful in that they address ordinances *in which there was either a total ban imposed on commercial speech or a content-based restriction, neither of which is present here. See* [*Metromedia* ]. Therefore, no further analysis of this issue is necessary.
>
> Here, as aptly noted by the trial court:
>
>> (1) [the zoning ordinance provision at issue] mandates the removal of commercial signs *regardless of [the] subject matter of the signage;* and (2) [the zoning ordinance provision at issue] *does not create a total ban on commercial signs;* [the zoning ordinance provision at issue] only requires the removal of commercial signs when there is a proposed land development or alteration or enlargement of an existing use.
>
> Tr. Ct., Slip Op. at 10 (emphasis added). Consequently, because the [zoning ordinance does] not attempt to regulate signage based on content or effectuate a total ban on commercial speech, application of *Central Hudson Gas* is unnecessary.

*Adams Outdoor,* 909 A.2d at 479–80 (emphasis in original); *see also Outdoor Media Group, Inc. v. City of Beaumont,* 506 F.3d 895, 907 (9th Cir.2007) (*Metromedia* found th[e] distinction [between off-site and on-site advertising] met the more stringent [*Central Hudson Gas* ] test because "off-site advertising with its periodically changing content, presents a more acute problem than does on-site advertising.") (citations omitted).

Based on the above-cited authority, which holds that a zoning ordinance that creates a distinction between on-site and off-site advertising billboards is permissible and does not violate the test set forth in *Central Hudson Gas,* we would reject Applicants' constitutional challenge, even if properly preserved.

In any event, *World Wide Rush,* the federal district court case upon which Applicant relies, is distinguishable. There, the District Court found a Los Angeles municipal regulation banning off-site advertising signs within 2,000 feet of a freeway failed the *Central Hudson Gas* test because the city "permitted multiple commercial signs" within 2,000 feet of a freeway, undermining the city's interests in traffic safety and aesthetics. *World Wide Rush,* 563 F.Supp.2d at 1152. Specifically, the court found the plaintiffs there, two billboard companies, showed three instances where the city permitted "giant commercial billboards" to stand within 2,000 feet of a freeway. *Id.* at 1151. The court concluded this evidence was sufficient to show a First Amendment violation.

Here, unlike in *World Wide Rush,* Applicant presented *no* evidence to show the City applied the Zoning Code's billboard regulations in a discriminatory manner so as to support a finding of a First Amend-

ment violation. Therefore, *World Wide Rush* does not compel the result sought by Applicant.[6]

Based on the foregoing, we reverse the trial court's order and reinstate the ZBA's order denying the variance.[7]

### *ORDER*

**AND NOW,** this 24th day July, 2009, the order of the Court of Common Pleas of Philadelphia is **REVERSED** and the order of the Zoning Board of Adjustment of the City of Philadelphia is **REINSTATED.**

6. Moreover, the reasoning employed by the District Court in *World Wide Rush* was recently rejected in *Clear Channel Outdoor, Inc. v. City of New York*, 608 F.Supp.2d 477 (S.D.N.Y.2009).

7. Applicant also argues the City here did not participate before the trial court in any meaningful way. It contends the City did not file a brief with the trial court, made the most perfunctory and conclusory argument to the trial court and never explained in any way how the ZBA's findings and conclusions purportedly were sound and supported by the record. Applicant asserts that because the City failed to give the trial court an opportunity to consider its positions, the City waived its arguments and is barred from asserting them now

for the first time. For this reason as well, Applicant argues, we should affirm the trial court. This argument fails.

Our review of the transcript of the brief oral argument held before the trial court here, R.R. at 132a–37a, reveals the City asserted the trial court should affirm the ZBA's decision because Applicant did not prove unnecessary hardship so as to justify the grant of the variance and the ZBA's decision was supported by substantial evidence and in accordance with law. R.R. at 136a–37a. These statements, although brief, were sufficient to preserve the City's appellate issues. Indeed, the trial court addressed these issues in its opinion. As such, we reject Applicant's waiver argument.