# Powelton Village Civic Association v. Zoning Board of Adjustment

26

*David George Orphanides*, for appellants.

*Sharon Lee Suleta*, for appellee Philadelphia Zoning Board of Adjustment.

*Andrew S. Ross*, for appellee City of Philadelphia.

*Eileen B. Quigley* and *Neil Sklaroff*, for appellee AT&T Wireless.

PADILLA, *J.*, May 14, 2015—Appellants, the Powelton Village Civic Association, Donald White, Robert Roomet, Richard Lowe, Carolyn Healy, John Phillips, Marilyn Taylor, Mark Brack, Steve Bell, and Joan White appeal from this Court's Order quashing their appeal from the final adjudication of the Zoning Board of Adjustment ("appellee").

## FACTUAL AND PROCEDURAL HISTORY

On June 17, 2014, AT&T Wireless ("applicant" or "intervenor") applied to the Philadelphia Department of Licenses and Inspections ("L&I") for a zoning/use registration permit for the proposed installation of six

wireless telecommunications antennas in the bell tower of an existing church and the erection of an equipment shed and fence in the back yard of the property, located at 3500 Baring Street in the City and County of Philadelphia, Pennsylvania. *See* application for zoning/use registration permit no. 516496; findings of fact ¶ 1, 8. The property is a 33,441 square foot lot located at the southwest corner of Baring Street and North 35th Street, in an RSA-3 Residential district, consisting of an existing church and parking lot. *See* findings of fact ¶ 7.

On February 4, 2014, L&I issued a notice of refusal as the proposed wireless facility required a special exception for the RSA-3 residential zoning district, and that the proposed facility, located on a parcel used as a church, violated Section 14-401(4)(a) of the Philadelphia Zoning Code, prohibiting more than one principal use per lot in RSA zoning districts. *See* notice of refusal, 2/4/14; findings of fact ¶ 2.

On March 5, 2014, applicant filed an application for special exception. *See* findings of fact ¶ 3.

On March 6, 2014, applicant filed an appeal from the refusal to appellee. *See* findings of fact ¶3.

On April 23, 2014, all parties appeared at a public hearing on the matter before appellee.

Prior to the hearing, intervener's attorney objected to the standing of the Powelton Village Civic Association. *See* findings of fact ¶ 5; N. T. 4/23/14 at 2-3.

Michael Clearey, a civil engineer retained by intervenor, testified that the antennas would be installed on both sides of the existing tower, behind louvers that

would be replaced with fiberglass louvers to look "exactly as they are presently constructed." Findings of fact ¶ 9, N. T. 4/23/14 at 31-32. The bell tower is 97.8 feet tall and structurally sufficient to support the antennas; cabling would be run from the tower, along the church's roof, through the attic, down the back of the building, and to the proposed equipment shelter twenty (20) feet from the church. *See* findings of fact ¶ 10-11; N. T. 4/23/14 at 31-33.

The shelter would be 11' 5" by twenty-eight (28) feet and approximately ten (10) feet high, enclosed by board fencing that would shield it from view, replacing an existing chain link fence. *See* findings of fact ¶ 12; N. T. 4/23/14 at 34-36. The entire enclosure would measure 812 square feet, housing an emergency generator on one side and telecommunications equipment on the other. *See* findings of fact ¶ 12-13; N. T. 4/23/14 at 31-33. The shelter would be equipped with a fire prevention system and emergency alarms, as well as a timed flood light for the technician. *See* findings of fact ¶ 14; N. T. 4/23/14 at 44-45. The generator would run continuously only during some power outages, but also contained a DC battery backup; other than emergencies, it would run for twenty (20) minutes each week for maintenance purposes at times least intrusive to the neighborhood. *See* findings of fact ¶ 15; N. T. 4/23/14 at 39, 42. Cleary testified that the generator would not produce any more noise than that used by AT&T across the board. *See* findings of fact ¶ 17; N. T. 4/23/14 at 42, 51-52.

Cleary testified that the installation would not cause congestion in the streets, overcrowd the land, place a burden on public facilities, impair or permanently injure

the use of other conforming properties, impair an adequate supply of light or air to adjacent properties, endanger the public safety, or alter the essential character of the neighborhood. *See* findings of fact ¶ 18; N. T. 4/23/14 at 51-52.

Matt Caffrey, a site acquisition specialist, testified that he works with wireless carriers to help them identify properties based upon the specific requirements they possess, based upon a search ring provided by the carrier's radio frequency engineer. *See* findings of fact ¶ 22-23; N. T. 4/23/14 at 4-5. He then identifies properties meeting the specifications as possible, and assisting with leasing, permitting, and zoning. *See* findings of fact ¶ 24; N. T. 4/23/14 at 5. Several sites on Drexel University's campus were considered, but were rejected for various reasons. *See* findings of fact ¶ 25-27; N. T. 4/23/14 at 6-8, 13-17. The church was then identified as an ideal site. *See* findings of fact ¶ 28; N. T. 4/23/14 at 8-9. In addition to the zoning approvals, the installation would require building permits, electrical permits, and the approval of the State Historic Preservation Office. *See* findings of fact ¶ 29; N. T. 4/23/14 at 9.

Caffrey testified that the proposed structure met all requirements for special exceptions and variances, and would not overcrowd the land, cause congestion in the streets, or burden public facilities. *See* findings of fact ¶ 31-32; N. T. 4/23/14 at 10-12. With regard to unnecessary hardship, Caffrey testified that this was the only site that fit the specifications and did not also require a building height variance. *See* findings of fact ¶ 33; N. T. 4/23/14 at 11. The approvals were the minimum necessary to afford relief, and the proposed use would not cause significant

environmental damage or alter the essential character of the neighborhood. *See* findings of fact ¶ 34; N. T. 4/23/14 at 12.

Brock Riffel, a radio frequency design consultant, testified on behalf of intervenor. He testified as to coverage maps to show where AT&T had existing reliable coverage, and where AT&T would like to have reliable coverage. *See* findings of fact ¶ 38-39; N. T. 4/23/14 at 58. He explained that changing cellular usage, including a 1,300 percent increase in data usage, with sixty (60) percent of that usage in the home, had driven intervenor to provide services closer to residential areas. *See* findings of fact ¶ 41-42; N. T. 4/23/14 at 61-64. Riffel testified that the property is located at the center of the depicted coverage gap, but the installation would fill only a subset of the area. *See* findings of fact ¶ 43; N. T. 4/23/14 at 63-65. Riffel testified that the range of antennas proposed is limited due to high population density and old houses built closely together. *See* findings of fact ¶ 44; N. T. 4/23/14 at 63. However, moving the site north to an area with less restrictive zoning, would still leave a "hole" where the majority of the residential usage is located. *See* findings of fact ¶ 45; N. T. 4/23/14 at 66, 74-75. Riffel testified that the proposed facility would be "well within" FCC guidelines for electromagnetic exposure levels and met the requirements for the grant of a variance and special exception, and the denial would affect intervener's ability to provide service in the subject area. *See* findings of fact ¶48-49; N. T. 4/23/14 at 67, 74-75.

John Phillips ("Phillips"), residing at 3503 Baring Street, appeared as vice president of the Powelton Village Civic Association, as a representative of the RCO, and on

behalf of himself as an immediate neighbor. *See* findings of fact ¶ 6; N. T. 4/23/14 at 113-114. Phillips testified that he did not want another use of the residential building, and was concerned about: noise from the generator; the potential for co-location by other carriers, and historic and structural changes involved in installing the antennas in the bell tower. *See* findings of fact ¶51-52; N. T. 4/23/14 at 87-88. Phillips also submitted a petition signed by area residents opposing a "tower" at the property. *See* findings of fact ¶ 52; N. T. 4/23/14 at 87-89.

On July 31, 2014, a scheduling order was issued by this court. Appellant's brief was due October 6, 2014; appellee's brief by November 3, 2014. Oral arguments were to take place December 1, 2014.

On September 13, 2014, and September 28, 2014, this court received the full certified record from appellee. In its conclusions of law, appellee found that, based on the evidence of the record, the arguments presented, and applicable code provisions, the requested relief was properly granted with the two provisos; specifically, appellee found that the criteria for a special exception were met and that L&I erred in concluding that a variance was required. *See* conclusions of law ¶ 1. However, if a variance was required, appellee also found that intervenor had satisfied the requirements as the specific allowance of wireless facilities in RSA-3 districts by special exception governed over the general provision prohibiting more than one principal use per lot. *See* conclusions of law ¶ 1-9. Additionally, the board found that giving effect to the provision prohibiting more than one principal use per lot would yield "the absurd result" of allowing antennas to be attached only to vacant buildings. *See* conclusions of law ¶ 9.

Additionally, appellee found that intervenor had satisfied the criteria for the grant of a special exception by presenting expert testimony and/or submitted exhibits establishing compliance with the requirements for grant of a special exception, and that there was no credible, objective evidence of record showing that the proposed facility would have an adverse impact greater than would normally be expected of such a use, or that it would be substantially likely to cause a detrimental impact on the health, safety, and welfare of the neighborhood, or failed to conform with the purpose, spirit, and intent of the zoning code. *See* conclusions of law ¶ 10-17.

Additionally, although appellee found that a variance was not required, intervenor had also satisfied the requirements of a variance grant due to the modified standard of hardship outlined in the Telecommunications Act of 1996, 47 U.S.C. § 332(c)(7), and that intervenor had established that the requested variance was the least necessary to afford relief, would not alter the character of the neighborhood, impair the use of surrounding properties, or adversely affect the public health, safety or welfare. *See* conclusions of law ¶ 24-31; Philadelphia Code § 14-303.

On October 6, 2014, appellee filed a motion for extraordinary relief due to the late filing of the certified record in order to allow both parties to file their briefs.

On October 23, 2014, this court granted appellant's motion for extraordinary relief and rescheduled oral argument for December 23, 2014. Appellant's brief was to be due November 12, 2014 and appellee's brief was to be due December 12, 2014.

On December 12, 2014, intervenor filed a motion to quash. In the motion, intervenor noted that appellant's brief was due November 12, 2014 and that appellant had neither filed a brief nor a motion for extraordinary relief, and thus failed to prosecute the appeal and deprived intervenor of the timely adjudication of said appeal. Consequently, intervenor requested that this court quash the appeal pursuant to Philadelphia County Court Rule 320(c) and established case law that failure to strictly comply with procedural and time requirements will result in the quashing of a zoning appeal. *See Ottaviano v. Society Hill Civic Ass'n*, 457 A.2d 1041, 1042 (Pa. Commw. Ct. 1982); *see also King Productions v. City of Pittsburgh*, 367 A.2d 322 (Pa. Commw. Ct. 1976).

On December 16, 2014, appellants filed a motion for extraordinary relief. Appellant's counsel averred that he elected to continue with representation of appellants despite the impending birth of his next child, however, "issues did arise leading up to the scheduled due date of counsel's next child and appellants' counsel was thus unable to file the appellants' brief by the date provided for by this court's October 21, 2014 order..." Appellant's counsel averred that he had contacted appellees as well as counsel for intervenor and that there was no objection to the granting of said motion or entering of the proposed order.

On January 13, 2015, this court granted appellants' motion. Appellants' brief was due January 9, 2015; appellees and intervenors' briefs were now due February 17, 2015, and oral argument would be held March 4, 2015.[1]

---

1. Although this order was not docketed until January 13, 2015, appellant did not file a brief in the intervening time.

On February 3, 2015, this court denied intervenors' motion to quash.

On February 4, 2015, following further consideration of the motions and record, this court vacated its previous orders and quashed appellants' appeal.

On March 6, 2015, appellant filed a timely notice of appeal to the Commonwealth Court of Pennsylvania.

On March 9, 2015, this court issued its order pursuant to Pa.R.A.P. 1925(b), directing appellants to file their concise statement of matters complained of on appeal within twenty-one (21) days.

On March 30, 2015, appellants filed their concise statement of matters complained of on appeal. However, said statement was in no way concise; however, in eight (8) pages, appellants did identify several court errors, including: that this court abused its discretion when it did not rule on appellants' motion for three (3) weeks; that this court erred when it quashed appellants' appeal; that this court erred in failing to provide appellants the opportunity for a fail trial; that this court erred "given the breakdown in the administrative process which established the non-negligent failure on the part of appellants to prosecute their appeal;" that this court erred when there were unique and compelling circumstances in appellants' failure to prosecute; that this court erred when appellants had "demonstrated a manifest intent to prosecute" their appeal; and finally that this court erred by not modifying the terms of appellants' proposed order when there was a "substantial change of circumstances" justifying modifications of the order.

## DISCUSSION

Appellant challenges this court's denial of its statutory appeal from the final adjudication of the zoning board of adjustment. The standard of review from a case in which the trial court did not take additional evidence is limited to determining whether the zoning board committed an abuse of discretion or error of law in rendering its decision. *Township of Exeter v. Zoning Hearing Board*, 599 Pa. 568, 962 A.2d 653, 659 (Pa. 2009). An abuse of discretion may be found only where the zoning board's findings are not supported by substantial evidence, which is "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Id.* Arguments not made before the zoning board are considered waived for purposes of appeal. *1700 Columbus Associates, LLC v. City of Philadelphia, Zoning Bd. of Adjustment*, 976 A.2d 1257, 1268 (Pa. Commw. Ct. 2009). An appellate court errs when it substitutes its judgment on the merits for that of a zoning board. *Id.*

On appeal, all of appellants' issues relate to this court's grant of intervener's motion to quash for failure to prosecute the appeal. Failure to strictly comply with procedural and time requirements will result in the quashing of a zoning appeal. *Ottaviano v. Soc'y Hill Civic Ass'n*, 73 Pa. Cmwlth. 307, 309-10, 457 A.2d 1041, 1042 (1983); *see also King Productions, Inc. v. Board of Adjustment \*310 of the City of Pittsburgh*, 27 Pa. Commonwealth Ct. 256, 367 A.2d 322 (1976). In the instant case, although this court originally granted appellants' motion for extraordinary relief, the record reflects that appellant failed to comply with scheduling requirements.

The first extension of time was granted October 6, 2014, at the request of appellee, extending appellants' scheduling deadline until November 12, 2014. During that time, appellants did not file a request for extension of time nor did they file their brief. It was not until December 16, 2014, four days after intervener's motion to quash was filed, that appellants filed a motion for extraordinary relief.

Additionally, this court did not rule on the motions until January 13, 2015. In the intervening time, appellant did not file a brief. Finally, when this court entered an order on intervenors' motion to quash on February 3, 2015, almost a month later, appellant still had not filed a brief. Consequently, this court did not abuse its discretion in quashing appellants' appeal for failure to prosecute.

## CONCLUSION

For all of the reasons stated above, this court's decision should be affirmed and appellant's appeal dismissed.