**Scott v. Zoning Board of Adjustment**

38

*Jonathan P. Newcomb*, for appellant.

*Sharon Lee Suleta*, for appellee Zoning Board of Adjustment.

*Daniel P. McElhatton* and *Jared Noah Klein*, for appellees Moyer Street Associates, LLC.

PADILLA, *J.*, May 18, 2015—Appellant, John Scott, appeals this court's order denying his statutory appeal from the final adjudication of Appellee the Zoning Board of Adjustment.

## FACTUAL AND PROCEDURAL HISTORY

On March 25, 2013, Moyer Street Associates, LLC ("intervenor") applied to the Philadelphia Department of Licenses and Inspections ("L&I") for a zoning use/registration permit for the construction of fourteen (14) residential units with thirteen (13) interior parking spaces at the subject Property ("the property") located at 412-424 Moyer Street. *See* findings of fact, ¶ 1; application for zoning/use registration permit no. 460914, The property is a vacant industrial parcel 11,550 square feet in size, located in an ICMX district, on the same block as RSA-5 residential zoning. *See* findings of fact, ¶ 5; Notes of Testimony, hereinafter N. T., 6/26/13 at 3. The property was last used as an auto salvage yard with a building

covering the entirety of the lot, which subsequently fell into disrepair after its vacancy. *See* findings of fact, ¶ 6-7; N. T. 6/26/13 at 3, 5. The majority of the surrounding properties are residential uses. *See* findings of fact, ¶ 9; N. T. 6/26/13 at 9.

On April 29, 2013, L&I issued a refusal notice as the proposed residential use was not permitted within the property's ICMX zoning district, and the proposed development did not meet the applicable requirements for; minimum rear yard depth, minimum aisle width, and provision of accessible parking spaces. *See* findings of fact, ¶ 2; Notice of Refusal, 4/29/13.

On May 2, 2013, intervenor filed a timely notice of appeal to appellee.

On June 26, 2013, a hearing was held before appellee.

Intervenor noted that, in 2008, appellee had granted use and dimensional variances for a proposed 14 unit residential development; the appeal eventually went to the Commonwealth Court of Pennsylvania, where that court upheld the grant of the use variance but remanded the matter for additional findings regarding the grant of dimensional variances for the project.[1] *See* findings of fact, ¶ 10-11; N. T. 6/26/13 at 3-4. However, due to changes in marketing conditions, the project did not go forward. N. T. 6/26/13 at 3-4. Intervenor also noted that the current project proposal had been changed to a plan with twelve (12) units. N. T. 6/26/13 at 2.

---

1. *Poole v. Zoning Bd. of Adjustment of City of Philadelphia*, 10 A.3d 381, 382 (Pa. Commw. Ct. 2010).

The proposed homes would have a one (1) car garage located off of the proposed center driveway between two parallel rows of homes; vehicular access would be from the Moyer Street entryway using a single 25' 3" wide curb cut. *See* findings of fact, ¶ 19; N. T. 6/26/13 at 4-5. These plans were reviewed and approved by the streets department. *See* findings of fact, ¶ 19; N. T. 6/26/13 at 4-5. The homes, with the exception of two carriage houses, would be thirty-three (33) feet in height; the carriage houses would be thirty-nine (39) feet in height. *See* findings of fact, ¶ 20; N. T. 6/26/13 at 6-7. The additional height of the carriage houses was to allow for vehicle clearance. *See* findings of fact, ¶ 21; N. T. 6/26/13 at 6-7. Each home would be three (3) stories high, with cellars, a roof deck, and a pilot house, consisting of approximately 1800 square feet. *See* findings of fact, ¶ 22; N.T. 6/26/13 at 5.

Intervenor further noted that there was a required rear yard depth of twenty (20) percent of the lot; though it had originally proposed 8.25 foot deep rear yards, as a consequence of the requirements it had increased the proposed depth to approximately ten (10) feet in the revised plans. *See* findings of fact, ¶ 31; N. T. 6/26/13 at 4. Because the homes on the adjacent Flora Street properties were built to the existing party wall and had no rear yards, building to within 10 feet of the rear lot line would not affect the neighbors' light or air. *See* findings of fact, ¶ 31; N. T. 6/26/13 at 4, 8. Intervenor argued that accessible parking spaces were more appropriately required for industrial and commercial developments with outdoor lots, not residential projects. Additionally, intervenor noted that the proposed width under the carriage house

units had been increased from 13.4 feet to twenty-two (22) feet, or two feet short of the required minimum of twenty-four (24) feet, and this revised proposal was approved by the Streets Department. *See* findings of fact, ¶ 34; N. T. 6/26/13 at 14.

Intervenor submitted a letter from Thomas Bond, a licensed real estate broker with twenty (20) years of experience in the Philadelphia market, stating that the small size of the site, its condition, lack of infrastructure, and constrained boundaries made it infeasible to develop the property for industrial use. *See* findings of fact, ¶ 24; certified record at 71; N. T. 6/26/13 at 9. Bond further noted that within a two (2) mile radius of the site there were other vacant industrial sites better suited to industrial use, and that it was unlikely the property would sell as an industrial site. *See* findings of fact, ¶ 24; certified record at 72.

James Moransky, the owner of the property since 2007, testified that he had listed the property for sale for over a year and that there had been no interest in it as an industrial site; almost every inquiry was for residential development and offers were contingent on zoning. *See* findings of fact, ¶ 26; N. T. 6/26/13 at 15.

Kevin Baird,[2] the property's equitable owner, also testified that a great deal of site work, including demolition and environmental remediation, was required at the property due to its previous use as a salvage yard and paint factory. *See* findings of fact, ¶ 28; N. T. 6/26/13 at 15-16. This use had resulted

2. Spelled "Bayard" in the Notes of Testimony.

in soil contamination, and preliminary estimated costs to remove that contaminated soil would exceed $100,000.00. *See* findings of fact, ¶ 28, N. T. 6/26/13 at 15-16, 28-29. He stated that all of the soil would need to be remediated and a steel structure would need to be taken down. N. T. 6/26/13 at 28.

Liz Zimmer, architect for intervenor, advised the board that one of the proposed garages could be revised to meet accessibility standards. *See* findings of fact, ¶ 33; N. T. 6/26/13 at 12.

Intervenor submitted a letter of support from the Fishtown Neighbors Association ("FNA"). *See* findings of fact, ¶ 35. FNA acknowledged that reaction to the project had been mixed, but neighbors had been "receptive and supportive" of the residential development of a long vacant building, the aesthetics of the building, and the parking plan. *See* findings of fact, ¶ 36. However, neighbors were concerned with the project's density and proximity to existing homes. *See* findings of fact, ¶ 36. However, the overall vote was positive. *See* findings of fact, ¶ 36.

Appellant testified that he objected to the back row of homes, which would block his view of Center City and turn the property "into a crime magnet." *See* findings of fact, ¶ 39; N. T. 6/26/13 at 34-35. Appellant noted he did not have a roof deck, but a staircase and commercial roof hatch, as well as a roof deck on the first floor. N. T. 6/26/13 at 38, 43. However, he keeps the hatch locked and does not have a permit for a roof deck. N. T. 6/26/13 at 38, 43. Appellant also admitted that there were three (3) story homes located on the block. N. T. 6/26/13 at 42.

Joanne Perone testified that the development was too dense, especially with roof decks, and that it would be "overwhelming." *See* findings of fact, ¶ 40; N. T. 6/26/13 at 41. She expressed concern about her privacy. *See* findings of fact, ¶ 40; N. T. 6/26/13 at 41. She presented a petition from fifty-two (52) local residents surrounding the property with their concerns about fire, safety, and density issues; intervener's counsel objected to the petition as he averred that it misrepresented the property and was thus illegitimate. *See* findings of fact, ¶41; N. T. 6/26/13 at 57-59.

Michael Poole testified that his concern was for fire safety. *See* findings of fact, ¶ 42; N. T. 6/26/13 at 54.

Barbara Tarnoff testified that she believed the project presented a quality of life issue; that if there were roof decks, there would be parties and trash; and "any number of things going on down there." *See* findings of fact, ¶43; N. T. 6/26/13 at 55-56.

Jeffery Young, a representative of Councilman Darrell Clarke's office, stated that Councilman Clarke had no position on the variance. *See* findings of fact, ¶ 44; N. T. 6/26/13 at 61.

Larissa Klevan, representing the planning commission, testified that the commission had no objection to the variance. *See* findings of fact, ¶ 45/ N. T. 6/26/13 at 61.

On October 22, 2013, intervener's attorney sent a letter to the Zoning Board of Adjustment with revised plans, reducing the number of units to eleven (11), as well as reducing the height of proposed pilot houses, and increasing proposed rear yard depth and driveway aisle

width. *See* findings of fact, ¶ 15-17. Applicant proposed two rows of attached homes with the front facing Moyer Street and the back parallel to the front row, facing a two-way driveway separating the rows. *See* findings of fact, ¶ 17. The back row would have rear yards twelve (12) feet deep, extending from the rear to an existing party wall along the property's rear lot line. *See* findings of fact, ¶ 18. The wall is shared with existing homes on adjacent properties fronting Flora Street. *See* findings of fact, ¶ 18. That same day, appellee granted intervener's the requested variances, with the proviso that the approval was per the revised plans stamped by appellee.

On November 21, 2013, appellant filed a notice of statutory appeal from the final adjudication of the Zoning Board of Adjustment.

On December 20, 2013, Kevin Baird and Moyer Street Associates, LLC filed a praecipe to intervene.

On April 9, 2014, intervenor filed a motion to quash arguing that appellant lacked standing and had filed his appeal in bad faith.

On April 28, 2014, appellant filed a motion for extraordinary relief due to the absence of a certified record from appellee.

On April 30, 2014, appellant filed an answer in opposition to the motion to quash.

On May 7, 2014, this court received a partial certified record from appellee containing its findings of fact and conclusions of law. Appellee found that the proposal was not permitted in the property's ICMX zoning district, nor did

it meet code requirements for rear yard depth, aisle width, or accessible parking spaces, thus requiring both use and dimensional variances. *See* conclusions of law, ¶ 1. Appellee concluded that intervenor had satisfied the criteria in the Philadelphia Code governing variances, and was appropriate. *See* conclusions of law, ¶ 3-5. With respect to the residential use, appellee found that efforts to market the property for industrial use were unsuccessful and that it was surrounded by residential properties; the evidence established that the variances sought were the minimum to afford relief. *See* conclusions of law, ¶ 6-7. Appellee accepted as credible and persuasive testimony indicating the costs of remediating the site and demolishing the existing structure make the number of proposed units the least necessary to make the project feasible. *See* conclusions of law, ¶ 7. Additionally, appellee found that the project would not negatively impact the public health, safety or welfare, but will return a blighted property to productive use compatible with the surrounding neighborhood. *See* conclusions of law, ¶ 8.

With regard to the variances, appellee agreed that the accessible space requirements are more properly applied to industrial and commercial developments, and the variance was no longer an issue as intervenor would provide one accessible space. *See* conclusions of law, ¶ 10. With regard to the aisle width variance, the increase in proposed width to twenty-two (22) feet, or two (2) feet from the minimum, made the variance de minimis. *See* conclusions of law, ¶ 11. With regard to the variance for rear yard depth, the enforcement of the requirement would result in unnecessary hardship as it would constrain development of the remainder of the site. *See* conclusions of law, ¶ 11-12.

Appellee concluded that the requested variances were properly granted. *See* conclusions of law, ¶ 14.

On May 20, 2014, this court granted appellant's April 28, 2014 motion for extraordinary relief.

On June 4, 2014, this court denied intervenor's motion to quash.

On June 15, 2014, appellant filed a motion for extraordinary relief.

On July 29, 2014, this court granted appellant's motion for extraordinary relief.

On August 24, 2014, this court received a supplemental certified record from appellee.

On September 2, 2014, appellant filed another motion for extraordinary relief.

On September 25, 2014, this court granted appellant's September 2, 2014 motion for extraordinary relief.

On September 30, 2014, appellant filed another motion for extraordinary relief.

On October 14, 2014, appellant filed a motion for evidentiary hearing, arguing that the record was incomplete because appellees did not include the demolition permit that had been granted on February 28, 2013; evidence of mortgages and agreements of sale for 412-424 Moyer Street; because although appellee's findings of fact stated that the soil was contaminated, Kevin Baird did not "actually use the word 'contamination;'" because of "missing correspondence;" "missing plans;" "missing L&I refusals;" written proof that Kevin Baird is the equitable

owner of the property; "documents online that differ from the physical file;" and a September 24, 2014 deed of sale for Icehouse Unit #10.

On October 23, 2014, this court granted appellant's September 30, 2014 motion for extraordinary relief.

On November 3, 2014, intervenor filed an answer in opposition to appellant's motion for evidentiary hearing. Intervenor noted that appellee had been presented with full and accurate information regarding the site demolition, the post hearing correspondence was both permissible and innocuous, and that the record was complete and that none of the documents or issues raised in appellant's motion had relevance to the determination of the zoning matter.

On November 9, 2014, appellant filed a sur-reply to intervener's answer. Appellant asserted that the conclusion regarding soil contamination referenced by appellee in its findings of fact must be found erroneous as intervenor acknowledged it never testified that soil contamination existed on the property; that intervener's proof of ownership, a jurisdictional requirement, was missing from the certified record; that appellant could not be afforded due process when no review of the "final zoning plans" was possible; and that intervenor "acknowledges that ex parte communications are either missing from, or misidentified in, the certified record."

On November 12, 2014, intervenor filed a sur-reply to appellant's sur-reply. The sur-reply averred that appellee's soil contamination conclusion was supported by the record in that testimony and had established that significant

remediation was anticipated, and that ownership of the parcel had never been in dispute, as Moyer Street Associates had been the owner of the parcel since July 15, 2008 and still owned the parcel at the time of filing.

On November 13, 2014, appellant filed another motion for extraordinary relief.

On November 19, 2014, intervenor filed an answer in opposition to appellant's November 13, 2014 motion for extraordinary relief.

On November 20, 2014, this court denied appellant's motion for evidentiary hearing.

On December 1, 2014, appellant filed his brief, arguing that:

Appellee erred as a matter of law when it failed to make any finding that the subject property could not be used for a permitted use;

that appellee erred when it found a hardship as a result of contamination causing costs of remediation to rise and justifying the grant of a variance;

that appellee erred when it found a hardship as a result of intervener's inability to sell the subject property;

that appellee erred when it failed to make a determination that intervenor's hardship was "not self-inflicted, resulting from intervener's purchase";

that appellee erred when it failed to make a "determination that intervenor's unspecified hardship was not self-inflicted, resulting from intervenor's neglect";

that appellee committed an error of law when it found that the residential accessible parking requirement did not apply;

that appellee committed an error of law when it found that literal enforcement of the rear yard requirement would unnecessarily constrain development;

that appellee erred when it identified a drive aisle variance as *de minimis* without corresponding finding that the variance would not impact health and safety;

that appellee lacked jurisdiction to review an application in which no refusal was granted, no hearing conducted, and no neighborhood meeting conducted;

that the "refusal is incomplete as it does not evaluate whether the property meets the requirements for a subdivision";

that appellee violated appellant's rights to due process when it "permitted communication and acceptance of the new plans without allowing [appellant] to comment on the deficiency";

that appellee erred when it approved plans in which "the apparent dimensions of the plans exceed the size of the property"; and finally.

that appellee committed an error of law when it failed to make a finding that the subject zoning variance would not be detrimental to the surrounding properties.

On December 8, 2014, this court denied appellant's November 13, 2014 motion for extraordinary relief.

On December 17, 2014, intervenor filed its brief. Intervenor objected to the vast majority of the argument contained within the brief submitted by appellant on the basis that this court denied appellant's motion for an evidentiary hearing, and appellant's brief was "replete" with references to information appearing nowhere in the record. Additionally, intervenor argued that the evidence presented to the board was adequate to support the variances granted; and that the variances were properly granted.

On December 19, 2014, appellant filed a supplemental brief arguing that intervenor had not addressed the majority of appellant's arguments; that intervenor's "identity has changed and intervenor's ownership is once again brought into question" because intervenor had been identified as Moyer Street Associates, LLC instead of Moyer Street Associates, LP; that intervenor's res judicata claim was fatal to intervenor's own application; that intervenor offered no case law supporting the argument that the rear yard depth variance granted was proper; that the Streets Department did not approve intervenor's drive aisle width; that the ADA parking space requirement "applies residential projects" [sic]; and finally, that intervenor's interpretation of appellant's property rights was unsupported by case law.

On December 22, 2014, intervenor filed a supplemental brief in response to appellant's supplemental brief. Intervenor argued that the record provided sufficient evidence of hardship; that the drive aisle variance was sufficiently supported by the record; and that intervenors had not "abandoned" their claim that remediation was

required and that the record fully supported appellee's findings.

On December 23, 2014, this court heard oral argument on the merits of the case.

Appellant argued that the conclusions of the ZBA had no basis in law, specifically the conclusion that the drive aisle was de minimis because the drive aisle was a safety issue. N. T. 12/23/14 at 16. Appellant questioned whether fire trucks would be able to reach the back row of homes at the property. N. T. 12/23/14 at 19. Appellant argued that he believed the plans calculated the yard depth incorrectly and that there were no specific facts given about the property that would make the set back not feasible; that the property was too dense and not within the zoning code; and that no unnecessary hardship existed. N. T. 12/23/14 at 19-21. Appellant argued that the property could be put to other uses in the ICMX zoning district, such as a laundromat, day care, or parking lot. N. T. 12/23/14 at 22-23. Appellant argued that evidence of attempts to sell, including the testimony of Moransky and the letter from Thomas Bond, were sham evidence. N. T. 12/23/14 at 28. Appellant additionally asserted that intervenor had "made up" the finding of the contaminated property as contamination was not mentioned in the record, other than intervenor stating that they were in the preliminary stages of testing the soil and that it would be expensive. N. T. 12/23/14 at 26-27.

Intervenor argued that appellant's only objection on the record in the zoning board was that he would lose his view of Center City. N. T. 12/23/14 at 29. However, appellant lived at least two hundred (200) feet away feet from the

property, with houses between, and testified that he did not have a roof deck or a permit for a roof deck. N. T. 12/23/14 at 29. Instead, appellant had "a hole in his roof or a trap that he could go and take pictures from but he wasn't using that." N. T. 12/23/14 at 30. Intervenor further argued that appellee had found, based upon evidence that was made part of the record in an open hearing before appellee, including testimony regarding the costs of remediation of the soil. N. T. 12/23/14 at 31-32. Intervenor noted there had been testimony about placing the property on the market and about the residential character of the community, and that appellee's grant of the variance had been reasonable based upon the record. N. T. 12/23/14 at 31. Intervenor further argued that though the code permitted uses such as a day care, the site was still unmarketable as an industrial site and the only interest from prospective buyers were for residential with zoning contingencies. N. T. 12/23/14 at 33-34. Intervenor noted that the twelve (12) foot yard setback was "more than required if it were to be in place today...but [appellee] at the time in 2013 found that this was an appropriate rear yard dimension." N. T. 12/23/14 at 35. With regard to the drive aisle, there was no testimony on the record regarding its safety or lack thereof. N. T. 12/23/14 at 35-36. Finally, intervenor argued that having fewer units would mean more parking issues as the drives would need to connect directly to the houses, rather than being situated behind them. N. T. 12/23/14 at 35-36.

Appellant argued in rebuttal that the view from his rear yard and front steps were also impacted. N. T. 12/23/14 at 37. Additionally, he argued that eleven (11) units were too many for the size of the lot; that it would be overly dense and create more parking and traffic; that the letter from

Bond was referenced but Bond was never referenced. N. T. 12/23/14 at 37. Appellant argued that the expense of rehabilitating the property did not make a hardship. N. T. 12/23/14 at 39.

On February 6, 2015, following a thorough examination of the record and related filings, this court denied appellant's statutory appeal.

On March 6, 2015, appellant filed a timely notice of statutory appeal to the Commonwealth Court of Pennsylvania.

On March 9, 2015, this court issued its order pursuant to Pa.R.A.P. 1925(b), directing appellant to file his concise statement of matters complained of on appeal within twenty-one (21) days.

On March 30, 2015, appellant filed its eleven (11) page concise statement of matters complained of on appeal.[3] Appellant identified four (4) basic errors complained of, namely that: this court erred when it denied appellant's motion for an evidentiary hearing; this court erred when it denied appellant's appeal as the decision was contrary to the "overwhelming and undisputed evidence" that the denial would not have resulted in unnecessary hardship; that this court's decision to deny appellant's appeal was contrary to the evidence and that Intervenor's hardship was self-imposed; and that appellant was denied substantive and procedural due process rights.

---

3. A second attempt by the trial court to encourage appellants to present a proper Pa.R.A.P. 1925(b) statement is unnecessary and not within the trial court's discretion. *Tucker v. R.M. Tours, Inc.*, 2007 Pa. Super. 352, 939 A.2d 343, 347 (2007).

## DISCUSSION

Appellant challenges this court's denial of his statutory appeal from the final adjudication of the Zoning Board of Adjustment. The standard of review from a case in which the trial court did not take additional evidence is limited to determining whether the zoning board committed an abuse of discretion or error of law in rendering its decision. *Township of Exeter v. Zoning Hearing Board*, 599 Pa. 568, 962 A.2d 653, 659 (Pa. 2009). An abuse of discretion may be found only where the zoning board's findings are not supported by substantial evidence, which is "relevant evidence which a reasonable mind would accept as adequate to support the conclusion reached." *Id.* Arguments not made before the zoning board are considered waived for purposes of appeal. *1700 Columbus Associates, LLC v. City of Philadelphia, Zoning Bd. of Adjustment*, 976 A.2d 1257, 1268 (Pa. Commw. Ct. 2009). An appellate court errs when it substitutes its judgment on the merits for that of a zoning board. *Id.*

## I. 1925(B) STATEMENT

Prior to reaching the merits of appellant's appeal, this court must address appellant's improper 1925(b) statement. The Pennsylvania Rules of Appellate Procedure are clear as to the requirements for appellants' statements. The statement must set forth only those rulings or errors the appellant intends to challenge; the statement must concisely identify each ruling or error that the appellant intends to challenge with sufficient detail to identify all pertinent issues for the judge; the judge shall not require appellant to file a brief in conjunction with the statement; the statement *should not be redundant or provide*

*lengthy explanations as to any error*, however, where non-redundant, non-frivolous issues are set forth in an *appropriately concise manner*, the number of errors raised will not alone be grounds for finding waiver. Pa.R.A.P. 1925(b)(4)(i)-(iv). The statement must be "concise" and coherent as to permit the trial court to understand the specific issues being raised on appeal. Tucker, 949 A.2d at 346.

In the instant case appellant has filed what amounts to a rambling, disorganized brief. It is separated into two sections, "errors complained of on appeal," which concisely identify the issues complained of on appeal, and "preservation of issues complained of on appeal," which does not. Section "B" of appellant's brief consists of ten (10) pages of unnumbered paragraphs and is replete with argument, references to his fifty-nine (59) page brief, as well as to information not in the record and not considered either at the zoning board hearing or before this court during oral argument, such as the demolition permit and mortgages on the property. At times the paragraphs listed under the subheadings seem to bear no relation to the error complained of itself. For example, in section (B)(4) of appellant's statement, in which he complains that this court's decision violated his substantive and procedural due process rights, he also raises an argument regarding appellee's grant of a variance with regard to accessible parking. The pages cited in his brief do not mention substantive or procedural due process arguments.

As noted above, a 1925(b) statement should not provide redundant or lengthy explanations as to the errors. For this

reason, appellant's eleven (11) page statement is improper, and this court will not address individually all issues and arguments raised by appellant therein outside of the four (4) arguments addressed below. Where a defendant files a Rule 1925(b) statement containing a multitude of issues that they did not intend to raise or could not raise before the court, such a defendant engages in misconduct. *See Kanter v. Epstein*, 2004 PA Super 470, 866 A.2d 394, 401 (2004). This is especially true considering that appellate briefing requirements limit appellants' brief to 14,000 words, including the statement of questions presented on appeal. *See* Pa.R.A.P. 2135; Pa.R.A.P. 2116. Consequently, all other issues should be considered waived. *Kanter*, 866 A.2d at 401.

## II. DENIAL OF MOTION FOR EVIDENTIARY HEARING

Appellant first argues that this court erred when it denied his motion for an evidentiary hearing due to a number of alleged issues with the findings of fact and conclusions of law that were "made up and contradictory." Upon motion, if it is shown that proper consideration of the land use appeal requires the presentation of additional evidence, however, if the record below includes findings of fact made by the board whose decision or action is brought up for review and the court does not take additional evidence, the findings of the board shall not be disturbed by the court if supported by substantial evidence. 53 Pa.C.S. § 11005-A. The lower court shall exercise its discretion and "cause an adequate record to be built so as to facilitate a proper review by the appellate court." *Brauns v. Borough of Swarthmore*, 4 Pa. Cmwlth. 627, 632, 288 A.2d 830,

833 (1972).

Appellant raises a number of arguments as to why the findings of fact were "contradictory" and incorrect to the point of requiring a hearing de novo. However, the majority of appellants' issues, including the demolition permit and mortgages, were not discussed at the hearing before the board. Consequently, such arguments are waived on appeal both before this court and before the Commonwealth Court of Pennsylvania. *1700 Columbus Associates, LLC v. City of Philadelphia, Zoning Bd. of Adjustment*, 976 A.2d 1257, 1268 (Pa. Commw. Ct. 2009). Similarly, though appellant challenges the lack of evidence of "contamination," testimony was given that the soil would need to be remediated and that it would be at great expense. N. T. 6/26/13 at 15-16, 28-29. The zoning board, as fact-finder, is the sole judge of credibility; and appellee found this testimony credible and persuasive. *Marshall v. City of Philadelphia*, 97 A.3d 323, 331 (Pa. 2014).

Upon examination of the record, this court found that it contained: the application for zoning/use registration permit, the notice of refusal, the application for appeal, the notice of decision, the notice of appeal scheduling a hearing date and time, a nine (9) page long findings of fact and conclusions of law, the transcript of the hearing before appellee consisting of fifty-nine (59) pages of testimony from nine (9) witnesses and argument of counsel, building plans, photographs of the property and surrounding neighborhood, and projections of the proposed construction. The total length of the certified record is two hundred thirty six (236) pages.

This court was provided with sufficient facts and information to find that the record was not incomplete and no trial de novo was necessary in this case.

### III. UNNECESSARY HARDSHIP

Appellant argues that this court erred when it denied appellant's appeal because it was "contrary to the overwhelming evidence that [appellee's] denial of intervenor's application would not have resulted in an unnecessary hardship." As noted above, where the court does not take additional evidence, challenges are limited to whether appellee committed an abuse of discretion or an error of law.

### a. Use Variance

The law governing the grant of a use variance is well-settled: the reasons for the variance must be substantial, serious, and compelling, and the party seeking the variance bears the burden of proving that "unnecessary hardship will result if the variance is denied." *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 501 Pa. 550, 554, 462 A.2d 637, 639 (1983). The hardship must be shown to be unique or peculiar to the property as distinguished from a hardship arising from the impact of zoning regulations on an entire district. *Id.* Moreover, mere evidence that the zoned use is less financially rewarding than the proposed use is insufficient to justify a variance. *Id.* In evaluating hardship the use of adjacent and surrounding land is unquestionably relevant. *Id.* Specifically, the Philadelphia Code Philadelphia Code, §14-303(8)(e)(.2), sets forth the following criteria that must be met:

a) That there are unique physical circumstances or conditions...peculiar to the property, and that the unnecessary hardship is due to such conditions...

b) That because of those physical circumstances or conditions, there is no possibility that the property can be used in strict conformity with...this zoning code, and that authorization of a variance is therefore necessary to enable the viable economic use of the property;

c) That the use variance, if granted, will not alter the essential character of the neighborhood...nor substantially or permanently impair the appropriate use or development of adjacent property, nor be detrimental to the public welfare; and

d) That the hardship cannot be cured by the grant of a dimensional variance.

The burden of proof is on the landowner when obtaining variances. *Yeager v. Zoning Hearing Board*, 779 A.2d 595 (Pa. Cmwlth Ct. 2001).

Other courts have used the following test: 1) the physical features of the property are such that it cannot be used for a particular purpose; or 2) the property can be conformed for a permitted use only at a prohibitive expense; or 3) the property is valueless for any purpose permitted by the zoning ordinance." *South of South Street Neighborhood Association v. Philadelphia Zoning Board of Adjustment*, 54 A.3d 115, 121 (Pa. Cmmw. 2012) (citing *Taliaferro v. Darby Township Zoning Hearing Board*, 873 A.2d 807, 812 (Pa. Cmmw. 2005). Unnecessary hardship may be established only where it is shown that compliance with the zoning ordinance would render the property

"practically useless." Evans v. Zoning Hearing Board, 723 A.2d at 686, 691 (Pa. Cmwlth. Ct. 1999). The course of time may effect changes to the property and surrounding areas that may create a hardship which did not exist. *S. of S. St. Neighborhood Ass'n*, 54 A.3d at 120.

In the instant case, testimony and evidence established that the property had been vacant for some time, and that intervenors attempted to market it for zoning compliant purposes for at least one (1) year without success. Any interest shown in the property was solely for residential use contingent upon use permits. Additionally, intervenors presented testimony from the owner of the property that it would cost at least $100,000 or more to remove the structure and remediate the soil, as well as providing pictures of the property and its state of decay. Intervenors submitted a letter from a licensed real estate broker with twenty (20) years' experience, who opined that due to the surrounding residential uses, the small size of the site, lack of infrastructure, and constrained boundaries made the site unsuitable for industrial use. In its conclusions of law, appellee held that the project would not alter the character of the neighborhood as it would establish a residential use compatible with the surrounding neighborhood. Additionally, a dimensional variance would not solve the issue in this case as the property's ICMX zoning district does not permit residential development. The use variance was thus properly granted, and appellee did not commit an error of law or abuse its discretion in granting it.

b. Yard Depth Dimensional Variance

Appellant additionally objects to the dimensional variance granted for the rear yard depth. When deciding

whether to find unnecessary hardship in the case of a dimensional variance, the zoning board "may consider the economic detriment to the applicant if the variance is denied, the financial burden created by any work necessary to bring the building into strict compliance with the zoning requirements and the characteristics of the surrounding neighborhood." Philadelphia Code § 14-308(e)(.3). In the instant case the proposed residences would have rear yards twelve (12) feet deep, although the minimum rear yard depth by RSA-5 regulations in § 14-701(2) would require a yard depth of twenty (20) feet.

Intervenor had reduced the units to allow for additional rear yard space. Appellee found that to comply strictly with the regulation, given the size and configuration, requiring a yard of that depth would unnecessarily constrain development of the remainder of the site. Testimony was presented at the hearing before appellee that twelve (12) units was the minimum feasible amount of units necessary in order to make the project profitable. Appellee found intervenor's testimony credible and persuasive, and consequently granted the variance. There was no abuse of discretion in this decision.

c. Aisle Width Dimensional Variance

Finally, appellant objects to the dimensional variance regarding the drive aisle variance was de minimis "ignored the safety concerns" raised by appellant. Intervenor's revised plans increased the width to twenty-two (22) feet, or two (2) feet from the minimum required by the code. Appellant presented no testimony or evidence that a firetruck could not fit through the drive aisle, and in fact, the plan had been approved by the Streets Department.

Although included in appellant's section related to unnecessary hardship, the grant of a de minimis variance authorizes a variance in the absence of a showing of the unnecessary hardship standard. *Lench v. Zoning Bd. of Adjustment of City of Pittsburgh*, 13 A.3d 576, 581-82 (Pa. Commw. Ct. 2011). The grant of such a variance is a matter of discretion with the board, and the burden on an applicant is at its lightest where the request involves a de minimis variance with respect to dimensional requirements, in this case, width. *Schomaker v. Zoning Hearing Board of the Borough of Franklin Park*, 994 A.2d 1196, 1203 (Pa. Commw. Ct. 2010). There is no set criteria for determining a de minimis variance and such a decision depends on the circumstances of the case. *Bailey v. Zoning Board of Adjustment of the City of Philadelphia*, 569 Pa. 147, 166 n. 21, 801 A.2d 492, 504 n. 21 (2002). A dimensional change of less than ten (10) percent will be treated as de minimis. *Lench*, 13 A.3d at 582.

In the instant case, the required aisle dimension is a twenty-four (24) foot minimum aisle width, whereas the plan approved by the Streets Department was twenty-two (22) feet. Two (2) feet represents an 8.33% dimensional change, and thus, appellee properly found that such a variance was de minimis.

## IV. HARDSHIP SELF IMPOSED

Appellant next argues that this court erred in finding that the hardship was not self-imposed. As noted above, in cases where this court takes no additional evidence, the standard is whether the zoning board abused its discretion or committed an error of law.

With regard to landowners who purchase with knowledge of the property's condition and existing zoning restrictions, a hardship is self-inflicted only where he has paid an unduly high price assuming the anticipated variance would justify the price, or where the size and shape of the parcel was affected by the transaction itself. *Wilson v. Plumstead Tp. Zoning Hearing Bd.*, 594 Pa. 416, 429-430, 936 A.2d 1061, 1068-1069 (2007). Pre-purchase knowledge, absent more, does not create hardship. *Id.*

In its conclusions, appellee found that the property is surrounded by residential properties, attempts to market it for other use were unsuccessful, and that the costs of remediating the site and demolishing the existing industrial structure make the number of units proposed to be the least necessary to make the project feasible. Appellee found intervenors' testimony and evidence credible and persuasive, including the testimony of Kevin Baird that the only offers for the property were not for industrial or other uses, but for residential contingent on zoning, and that the cost of remediating the soil and demolition would exceed $100,000.00.

Consequently, appellee did not abuse its discretion or commit an error of law in finding that the hardship was not self-imposed.

## V. DENIAL OF DUE PROCESS RIGHTS

In his last issue appellant argues that "the court's decision to deny [appellant's] appeal was contrary to the overwhelming evidence on record that [appellee] effectively denied appellant substantive and procedural due process rights under the law." As noted above,

appellant filed a motion for an evidentiary hearing in an attempt to admit evidence of "correspondence" and other issues into evidence. Similarly, as noted above, this court properly denied appellant's motion for an evidentiary hearing and the evidence on the record was sufficient to conduct a meaningful review of the issues on appeal.

Appellant received all process due and has asserted no claim of prejudice or articulated a specific harm. "The statutory notice and publication requirements are to ensure the public's right to participate in the consideration and enactment of municipal land use decisions." *In re McGlynn*, 974 A.2d 525 (Pa. Commw. Ct. 2009). These notice provisions are enacted to protect procedural due process, which is flexible and imposes "only such procedural safeguards as the situation warrants." *Id.* Demonstrable prejudice is a key factor in assessing whether procedural due process was denied. *Id.*

In the instant case, the public hearing was advertised and held in accordance with the Philadelphia Code § 14-303(13)-(15). Appellant appeared, represented by counsel, and participated in voicing his objections on the record. He filed an appeal to this court and participated in oral argument, again represented by counsel. Consequently, appellant's procedural due process rights were not violated.

Appellant's argument regarding substantive due process is inapplicable in the instant situation. Substantive due process is the exercise of police power for the purpose of preserving the public health, safety, and morals of the Commonwealth; it is an "esoteric concept interwoven within our judicial framework to guarantee fundamental fairness and substantial justice" in order to protect

fundamental liberty interests against infringement by the government. *Khan v. State Board of Auctioneer Examiners*, 577 Pa. 166, 187-188, 842 A.2d 936, 947-949 (2004). For substantive due process rights to attach there must first be a deprivation of a property right or other constitutionally protected interest. *Id.* It is unclear from appellant's 1925(b) statement exactly how his substantive due process rights were violated, however, Pa.R.A.P. 1925(b)(4)(ii) requires that the appellant identify the issue with sufficient detail to identify pertinent issues for the trial judge; where the court must guess at the issues that is not enough for meaningful review. *See* Pa.R.A.P. 1925(b); *Commonwealth v. Reeves*, 907 A.2d 1, 2 (Pa. Super. 2006).

## CONCLUSION

For all of the reasons stated above, this court's decision should be affirmed and appellant's appeal dismissed.